# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### SOUTHERN DIVISION

| | | |
|---|---|---|
| ERIC GREGORY DOLL, ET AL., On Behalf Of Themselves And All Others Similarly Situated, | ) ) ) | C.A. No. 8:10-cv-01505-AW |
| | ) | |
| Plaintiffs, | ) ) | PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT |
| vs. | ) | FORD MOTOR COMPANY'S MOTION TO DISMISS |
| | ) | |
| FORD MOTOR COMPANY, A Delaware Corporation, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iii-x

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS .................................................................................... 3

STANDARD OF REVIEW .................................................................................... 7

ARGUMENT ........................................................................................................ 7

I.    The Court Should Deny Ford's Request To Dismiss The Implied
      Warranty Claims .................................................................................... 7

      A.    The Implied Warranty Claims Of Plaintiffs Abraham, Doll,
            Pollack, Regensburger and The Ziehrs Are Not Barred
            By The Statute Of Limitations .................................................... 7

      B.    The Court Should Not Dismiss Plaintiffs' Implied Warranty Claims Based
            On Lack Of Privity ...................................................................... 12

            1.    Plaintiff Abraham Has Satisfied
                  Any Illinois Privity Requirement ...................................... 13

            2.    The Ziehrs Have Satisfied
                  Any New York Privity Requirement .................................. 14

      C.    The Implied Warranty Claims of Plaintiffs Abraham, Doll, Mixon and
            Regensburger Should Not Be Dismissed Because The Plaintiffs
            Gave Adequate Notice. ................................................................ 16

            1.    Plaintiff Abraham Gave Adequate Notice Under
                  Illinois Law .................................................................... 17

            2.    Plaintiff Doll Gave Adequate Notice Under
                  Maryland Law .................................................................. 18

            3.    Plaintiff Mixon Gave Adequate Notice Under
                  South Carolina Law ......................................................... 19

            4.    Plaintiff Regensburger Gave Adequate Notice Under
                  Pennsylvania Law ............................................................ 20

      D.    The CAC Adequately Alleges That Defendant Breached The Implied
            Warranty Of Merchantability. ..................................................... 20

i

II.     Plaintiffs Have Adequately Pled Consumer Protection Act Claims .....................23

        A.     Plaintiffs Have Pled Their Allegations With The Required Particularity..23

        B.     Plaintiff Garcia Has Adequately Plead A Cause of Action Under The
               Florida Unfair Trade Practices Act ...........................................................23

        C.     Plaintiff Doll Has Adequately Plead A Cause of Action Under The
               Maryland Consumer Protection Act. ........................................................25

        D.     Plaintiff Pollack Has Adequately Plead A Cause of Action Under The
               Maine Unfair Trade Practices Act. ..........................................................26

        E.     Plaintiff The Ziehrs Have Adequately Plead A Cause of Action Under The
               New York Deceptive Trade Practices Act. ................................................29

        F.     Plaintiff Regensburger Has Adequately Plead a Cause of Action Under
               The Pennsylvania Unfair Trade Practices and Consumer Protection Law.30

               1.     The Claim Is Not Barred By The Economic Loss Doctrine ..........30

               2.     Regensburger Has Plead Justifiable Reliance ...............................32

        G.     Defendant's Issuance Of An Express Warranty Does Not Preclude
               Plaintiffs'Consumer Fraud Claims  .........................................................33

III.    Plaintiffs State Claims For Unjust Enrichment ....................................................37

        A.     Plaintiffs Abraham, Doll, Pollack And The Ziehrs Are Permitted To Plead
               Alternative Claims For Unjust Enrichment ..............................................37

        B.     Plaintiffs Garcia, Mixon And Regensburger Have Adequately
               Pled Causes Of Action For Unjust Enrichment ........................................39

CONCLUSION ..............................................................................................................40

**TABLE OF AUTHORITIES**

## Cases

*Adams v. NVR Homes, Inc.*,
  135 F.Supp.2d 675 (D.Md. 2001) ................................................................26

*Aqualon Co. v. MAC Equip. Inc.*,
  149 F.3d 262 (4th Cir. 1998) ....................................................................16

*Ball v. Sony Elecs. Inc.*,
  No. 05-C-307-S, 2005 WL 2406145 (W.D. Wisc. Sept. 28, 2005).......................27, 35

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................7

*Bildstein v. Mastercard Int'l Inc.*,
  No. 03 Civ.9826I (WHP), 2005 WL 1324972 (S.D.N.Y. June 6, 2005)................30

*Bilt-Rite Contractors, Inc. v. The Architectural Studio*,
  866 A.2d 270 (Pa. 2005)...........................................................................31

*Binette v. Dyer Library Assoc.*,
  688 A.2d 898 (Me. 1996).........................................................................28

*Blither v. Packard*,
  115 Me. 306 (1916).................................................................................27

*Blue Cross & Blue Shield of N.J. v. Philip Morris USA Inc.*,
  3 N.Y.3d 200 (2004).................................................................................29

*Boule v. Hutton*,
  328 F.3d 84 (2d Cir.2003).........................................................................29

*Brack v. Evans*,
  203 Md. 548, 187 A.2d 880 (1963) ............................................................10

*Brown v. American Broadcasting Co.*,
  704 F. 2d 1296 (4th Cir. 1983) ...................................................................8

*Butcher v. Robert Shaw Controls Company*,
  550 F. Supp. 692 (D. Md. 1981)...............................................................9, 10

*Carlson v. General Motors Company*,
  883 F. 2d 287 (4th Cir. 1989) ...................................................................21

*Coakley & Williams, Inc. v. Shatterproof Glass Corp.*,
  706 F. 2d 456 (4th Cir. 1983) ................................................................................................11

*Connick v. Suzuki Motors Company, Ltd.*,
  675 N.E.2d 584 (Ill. 1996) .............................................................................. 16-19, 34

*County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*,
  747 A.2d 600 (Md. 2000) ................................................................................................38

*Cox House Moving, Inc. v. Ford Motor Co.*,
  No. 7:06-1218-HMH, 2006 WL 2303182 (D.S.C. Aug. 8, 2006) .............................................22

*Davis v. Goodman*,
  700 A.2d 798 (Md.App.1997) ..........................................................................................26

*Davis v. Powertel, Inc.*,
  776 So.2d 971 (Fla. 1st DCA 2000) ....................................................................................25

*Dewey v. Volkswagen AG*,
  558 F. Supp. 2d 505 (D.N.J. 2008) ....................................................................................12

*Estate of White ex. rel. White v. R. J. Reynolds Tobacco Co.*,
  109 F. Supp. 2d 424 (D. Md. 2000) ....................................................................................12

*Falk v. General Motors Corporation*,
  496 F.Supp.2d 1088 (N.D.Cal. 2007) .............................................................................11, 12

*Firestone Tire & Rubber Co. v. Cannon*,
  53 Md. App. 106, 452 A.2d 192 (1982).............................................................................18, 19

*Fogarazzo v. Lehman Bros.*,
  341 F.Supp.2d 274 (S.D.N.Y. 2004).....................................................................................29

*Galstaldi v. Sunvest Communities USA, LLC*,
  637 F.Supp.2d 1045 (S.D.Fla. 2009) ..................................................................................25

*Gen. Motors Acceptance Corp. v. Laesser*,
  718 So.2d 276 (Fla.Ct.App. 1998)......................................................................................25

*Global Ground Support, LLC v. Glazer Enters., Inc.*,
  581 F.Supp.2d 669 (E.D. Pa. 2008) ....................................................................................39

*GMAC Comm. Mortgage Corp. v. Gleichman*,
  84 F.Supp.2d 127 (D. Me. 1999) ......................................................................................38

*Goodman v. Praxair, Inc.*,
  494 F.3d 458 (4th Cir. 2007) ..................................................................17

*Gordon v. Ford Motor Co.*,
  657 N.Y.S. 2d 43 (N.Y. App. Div. 1st Dep't 1997)..................................14

*Harvey v. Nissan North America, Inc.*,
  No. C 12016-04, 2005 WL 1252341 (N.J.Super.Ct. April 29, 2005).........36

*Hayes v. Hambruch*,
  841 F.Supp. 706 (D.Md. 1994) ...............................................................26

*Hearns v. Parisi*,
  No. Civ.A. 3:CV-05-323, 2006 WL 839362 (M.D.Pa. Mar. 27, 2006)........31

*Henry v. Rehab Plus, Inc.*,
  404 F.Supp. 2d 435 ( E.D.N.Y. 2005) .....................................................29

*Hoang v. Georgetown Contractors, Inc.*,
  No. 8:10-CV-2117-AW, 2010 WL 4485729 (D.Md. Nov. 9, 2010) ............38

*Hubbard v. Gen. Motors Corp.*,
  1996 WL 274018 (S.D.N.Y. 1996)...........................................................15

*Hunt v. United States Tobacco Co.*,
  538 F. 3d 217 (3d Cir. 2008).....................................................................32

*In Re Ford Motor Co. E-350 Van Products Liability Litigation*,
  MDL No. 1687, 2010 WL 2813788 (D.N.J. July 9, 2010)....................15, 20

*In Re Ford Ignition Switch Products*,
  MDL No. 1112, 1999 WL 33495352 (D.N.J. May 14, 1999) ....................11

*In re PEC Solutions, Inc. Securities Litigation*,
  418 F.3d 379 (4th Cir. 2005) .....................................................................7

*Island Creek Coal Co. v. Lake Shore, Inc.*,
  832 F.2d 274 (4th Cir.1987). ....................................................................40

*Johnson v. Body Solutions of Commack, LLC*,
  No. HUSC 769-07, 2008 WL 2008969 (N.Y.Dist.Ct. April 3, 2008) .........30

*Jones v. Koons Automotive, Inc.*,
  No. DKC 09-3362, 2010 WL 4449388 (Nov. 5, 2010) ........................22, 38

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941)....................................................................................................8

*Keller v. Volkswagen of Am., Inc.*,
  733 A.2d 642 (Pa. Super. Ct. 1999)........................................................................32

*Kraft v. Staten Island Boat Sales, Inc.*,
  No. 09 Civ. 4157(RJS), 2010 WL 2102633 (S.D.N.Y. May 17, 2010).....................27

*Linares v. Richards*,
  No. 08-CV-3234, 2009 WL 2386083 (E.D.N.Y. Aug. 3, 2009) ................................38

*Lloyd v. General Motors Corporation*,
  397 Md. 108, 916 A. 2d 257 (Md. 2007)..................................................................21

*Lloyd v. General Motors Co.*,
  575 F. Supp. 2d 714 (D. Md. 2008) .........................................................................18

*Lopez v. Washington Mut. Bank, F.A.*,
  No. 1:09-CV-1838 AWI JLT, 2010 WL 1558938 (E.D. Cal. April 19, 2010)............27

*MacCormack v. Brower*,
  948 A.2d 1259 (Me. 2008).......................................................................................27

*Malawy v. Richards Manufacturing Co.*,
  150 Ill. App. 3d 549, 501 N.E. 2d 376 (1986) .........................................................18

*Mango v. Pierce-Coombs*,
  370 N.J.Super. 239 (App.Div.2004) ...................................................................36, 37

*Maniscalco v. Brother Int'l Corp.*,
  627 F.Supp.2d 494 (D.NJ. 2009) .............................................................................37

*McCalley v. Samsung Elecs. Am. Inc.*,
  No. 07-2141, 2008 WL 878402 (D.NJ. 2008) ..........................................................37

*Moore v. Kayport Package Exp., Inc.*,
  885 F.2d 531 (9th Cir. 1989) ...................................................................................11

*Neuser v. Carrier Corp.*,
  No. 06-C-645-S, 2007 WL 484779 (W.D.Wis. Feb. 9, 2007)...................................35

*Noble v. Porsche Cars N. Am., Inc.*,
  694 F.Supp.2d 333 (D.NJ. 2010) .............................................................................36

*O'Keefe v. Mercedes-Benz USA*,
  214 F.R.D. 266 (E.D.Pa. 2003)...................................................................30, 31

*Omron Elec. Components LLC v. Thinklogical, Inc.*,
  No. 09 C 953, 2009 WL 4823905, (N.D.Ill. Dec. 9, 2009) .........................28

*Oppenheimer v. York International*,
  No. 4348, 2002 WL 31409949 (Pa. Com. Pl. Oct. 25, 2002).......................31

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995) ...............................................................23, 29, 30, 33

*Overland Bond & Investment Corp. v. Howard*,
  9 Ill. App.3d 348, 292 N.E. 2d 168 (1972) .................................................17

*Pearson v. DaimlerChrysler Corp.*,
  349 Ill. App. 3d 688, 813 N.E. 2d 230 (Ill. App. 2004)................................21

*Pelman ex rel. Pelman v. McDonald's Corp.*,
  396 F.3d 508 (2d Cir.2005).........................................................................29

*Perkins v. DaimlerChrysler Corp.*,
  890 A.2d 997 (N.J.Super. App. Div. 2006) .............................................36, 37

*PNR, Inc. v. Beacon Property Management, Inc.*,
  842 So.2d 773 (2003)..............................................................................24, 34

*Priebe v. Autobarn Ltd.*,
  240 F.3d 584 (7th Cir. 2001) .......................................................................23

*Prudential Ins. Co. v. Clark Consulting, Inc.*,
  548 F. Supp. 2d 619 (N.D. Ill. 2008) ...........................................................38

*Pyramid Condominium Ass'n v. Morgan*,
  606 F.Supp. 592 (D.Md. 1985)......................................................................7

*Samuel-Bassett v. KIA Motors America, Inc.*,
  357 F.3d 392 (3rd Cir. 2004) .......................................................................31

*Sauner v. Pub. Serv. Auth. of S.C.*,
  581 S.E.2d 161 (S.C. 2003) .........................................................................39

*Schreib v. Walt Disney Co.*,
  No. 1-05-0094, 2006 WL 573008 (Ill. App. Feb. 1, 2006)............................17

*Seldon v. Home Loans Servs.*,
  647 F. Supp. 2d 451 (E.D.Pa. 2009) ....................................................................32

*Semitekol v. Monaco Coach Corp.*,
  582 F. Supp. 2d 1009 (N.D.Ill. 2008) .............................................................13, 14

*Sheris v. Nissan N. Am. Inc.*,
  No. 07-2516 (WHW), 2008 WL 2354908 (D.N.J. June 3, 2008)..............................22

*Smith v. Ford Motor Co.*,
  No. C-06-00497 MMC, 2010 WL 3619853 (N.D.Cal. Sept. 13, 2010) ....................27

*Smith v. Reinhart Ford*,
  68 Pa D & C 4th 432 (Lancaster, 2004) ................................................................31

*Simmons v. Ciba-Geigy Corp.*,
  279 S.C. 26, 302 S.E. 2d 17 (S.C. 1983) ..............................................................19

*Spartanburg County School Dist. Seven v. U.S. Gypsum*,
  842 F. 2d 1292 (4th Cir. 1988) ..............................................................................19

*Solarz v. DaimlerChrysler Corp.*,
  No. 2033, 2002 WL 452218 (Pa. Com. Pl. Mar. 13, 2002)....................................20

*Solomon v. Bell Atl. Corp.*,
  9 A.D.3d 49 (N.Y. 1st Dep't 2004) ......................................................................29

*State v. Weinschenk*,
  868 A.2d 200 (Me. 2005) .................................................................................28, 34

*Stutman v. Chem. Bank*,
  95 N.Y.2d 24 (2000) ............................................................................................29

*Swindell v. Crowson*,
  712 So.2d 1162 (Fla.Ct.App. 1998)......................................................................39

*Thomas v. Louisiana-Pacific Corp.*,
  246 F.R.D. 505 (D.S.C. 2007) .............................................................................19

*Tierney v. Ford Motor Co.*,
  436 A.2d 866 (Me. 1981)......................................................................................27

*Tietsworth v. Sears*,
  No. 09-cv-288, __ F.Supp.2d ___, 2010 WL 1268093 (N.D.Cal. March 31, 2010)...................36

*U.S. Home Corporation v. Settler's Crossing LLC,*
2010 WL 958034 (D. Md. March 11, 2010) ...................................................................9

*Wade v. Tiffin Motorhomes, Inc.,*
686 F. Supp. 2d 174 (N.D.N.Y. 2009) ........................................................................15

*Weiner v. Armstrong Cork Co.,*
7 Pa. D. & C. 3d 470 (P. Com. Pl. 1978) ....................................................................12

*Werwinski v. Ford Motor Co.,*
286 F. 3d 661 (3d Cir. 2002) ..............................................................................31, 32

*Yong Cha Hong v. Marriott Corp.,*
656 F.Supp. 445 (D.Md.1987) ....................................................................................22

*Zwicker v. General Motors Corporation,*
2007 WL 5309204 (W.D. Wa. July 26, 2007) ......................................................11, 12

*Zwiercan v. GMC,*
No. 3235, 2002 WL 31053838 (Pa. Com. Pl. Sept. 11, 2002) ............................31, 32, 34

**Statutes and Rules**

Fed.R.Civ.P. 8(a)(3) ...................................................................................................38

Fed.R.Civ.P. 9(b) ..............................................................................................7, 9, 11

Fed.R.Civ.P. 12(b)(6) .............................................................................................7, 21

Florida Unfair Trade Practices Act,
F.S.A. 501.201, *et seq.* ........................................................................23, 24, 25

Maine Unfair Trade Practices Act,
5 M.R.S.A. § 205-A, *et seq.* ...............................................................26, 27, 28

Maryland Consumer Protection Act,
Md. Code Ann., Comm. Law, § 13-101, *et seq.,* ................................23, 25, 26

MD. CTS & JUD. PROC. CODE ANN. § 5-203 .........................................................8

New Jersey Consumer Fraud Act,
N.J.S.A. 56:8-2 .....................................................................................................36

New York Deceptive Trade Practices Act,
N.Y. Gen. Bus. Law § 349, *et seq.* ..........................................................23, 24

Pennsylvania Unfair Trade Practices and Consumer Protection Law,
 73 Pa.C.S.A. §§ 201-1, *et seq.* ............................................................................................30, 32

## INTRODUCTION

Plaintiffs, Donald L. Abraham ("Abraham"), Eric Gregory Doll ("Doll"), David Garcia ("Garcia"), Stephen Mixon ("Mixon"), Matthew Pollack ("Pollack"), Michael Regensburger ("Regensburger"), and Patrick and Shirley Ziehr ("the Ziehrs") (collectively, "Plaintiffs") are purchasers of 2004 and 2005 Ford Freestar or Mercury Monterey model vehicles (the "Vehicle(s)") manufactured and distributed by Defendant, Ford Motor Company ("Ford" or "Defendant").  The Vehicles are afflicted with a pervasive and uniform torque converter defect which causes the Vehicles to lose ability to maintain speed or accelerate suddenly and without warning.  The defect is a significant safety risk, as the torque converter failure regularly occurs, as in the case of Plaintiffs and thousands of other consumers, while the Vehicles are being driven at highway speeds.  Although Ford was aware of the defect at least as early as January 2004, it did not tell its customers.

In seeking to dismiss each of Plaintiffs' well-pled claims, Ford mischaracterizes Plaintiffs' allegations and purposefully ignores the specific averments regarding a defect that has resulted in Plaintiffs and similarly situated consumers incurring significant costs in connection with repairing their vehicles and being subjected to significant safety risks.  Bereft of a logical reason why it should escape responsibility for these defects, Ford is reduced to trotting out a parade of horribles -- namely that if Plaintiffs are permitted to pursue their claims, automobile manufacturers will be deemed liable for any mechanical failure occurring for any reason on any vehicle.  Ford's attempts to remove the focus from its conduct are transparent, and its professed fears of unlimited liability are unfounded.  As referenced above, and set forth clearly in the exceedingly detailed Consolidated Amended Complaint ("CAC"), the harm at issue here does not stem from an isolated, unanticipated failure of a random vehicle component.  Rather,

Plaintiffs are claiming substantial harm because they incurred, or will incur, extraordinary replacement costs as a direct result of the defects known to Ford, that Ford actively concealed and failed to disclose, and which uniformly affect the Vehicles.  The conduct alleged is precisely the type that warranties and consumer protection statutes are intended to address.  Contrary to Ford's self-serving and misguided interpretation of Plaintiffs' claims, the only inequity that could arise here would be if Ford escapes responsibility for these common defects.  The CAC properly alleges claims for breach of implied warranty, unjust enrichment, and violations of consumer protection statutes.  Simply put, Ford's position that no cause of action exists where, as here, it is alleged to have manufactured and sold Vehicles (indeed family Vehicles) with a pervasive defect that implicates, *inter alia*, significant safety concerns, is untenable.

Accordingly, Ford's Motion to Dismiss ("Motion") should be denied in its entirety.

## STATEMENT OF FACTS

The Vehicles at issue here were manufactured, marketed and sold by Defendant throughout the United States, including the states of Florida, Illinois, Maine, Maryland, New York, Pennsylvania and South Carolina, through its established network of licensed dealers and distributors.  (CAC at ¶¶ 1, 18.)  All of the Vehicles are factory-equipped with a torque converter and 4-speed automatic transmission.  The torque converter was (and is) defective at all relevant times.  The torque converter defect causes the Vehicles to lose the ability to maintain speed or accelerate, suddenly and without warning, rendering the Vehicles either entirely inoperable or barely maneuverable.  This sudden failure can occur at any time when the Vehicles are in operation, including, but not limited to, when being driven on highways and streets.  As a result of the defective torque converter, the Vehicles require costly replacement and/or repair of the torque converter, transmission, and/or related parts, and pose a safety hazard for drivers and passengers of the Vehicles, as well as for other vehicles traveling on public highways and streets. (CAC at ¶ 19.)

In or around July 2009, the National Highway Traffic Safety Administration ("NHTSA") initiated a preliminary investigation of the Vehicles to evaluate complaints of transmission failure.  On November 10, 2009, NHTSA escalated its investigation to the Engineering Analysis ("EA") phase.  According to NHTSA, the EA phase is the "[s]econd and final phase of a NHTSA investigation, an EA is undertaken if data from a PE [Preliminary Evaluation] indicate further examination of a potential safety defect is warranted."  Ford told NHTSA that it had received 2,791 warranty claims over a loss of power involving the Vehicles.  Ford also admitted to NHTSA that "while a torque converter replacement typically can cost well over $1,000, a

torque converter malfunction can sometimes damage other transmission components, requiring a complete transmission replacement, which typically costs $3,000." (CAC at ¶ 20.)

Ford became aware of customer complaints regarding the torque converter defect and resulting transmission failures well before NHTSA's July 2009 preliminary investigation. Indeed, in as early as 2004 and 2005, owners complained about this very problem to NHTSA. For example:

- Was driving my 2004 Ford Mini Van Freestar when transmission just up and quit working.  [Reported failure date:  January 4, 2004].

- Was driving down the street in my 2005 Ford Freestar Van when I had to stop and put the vehicle in park to get out and check on something in the back. When I attempted to put the van back in drive, the only gear that was working was neutral. With no warning the transmission went out. We were fortunate we were not driving down the road at the time.  [Reported failure date:  April 25, 2004].

- I have a 2005 Ford Freestar that needs a transmission. I was driving to work today and out of nowhere my van stopped driving. The engine was on but the van wouldn't move. I was just about to get onto Interstate 495 (about 100 feet from on ramp) I could have been killed my children could have been killed. My car wouldn't move at all!!! I was scared to death. I have read many complaints today about the transmission problem with Ford Freestars. I can't believe that there has been no recall. I [sic] will cost me $3,000 dollars to have this fixed. I have 4 children, where do I get this money from? I have my van at a garage that we go to for regular maintenance. They are telling me there is no warranty on this van. How does this van just up and die when it is 3 years old with 55,000 miles on it and Ford is not responsible for anything?  [Reported failure date:  April 23, 2005].

- Sudden transmission failure without prior notice.  [Reported failure date:  August 29, 2005].

- Traveling on Interstate 95 with cruise control on at 79mph in heavy traffic as [sic] was end of Thanksgiving Holiday and engine revved and could not control speed – no forward motion when attempting to accelerate. Turned on the hazard lights and coasted to side of road. No warning or lights on dashboard to indicate any trouble just unable to accelerate. Towed and informed that torque converter the issue and may be additional problems - at this time attempting to find parts (new or refurbished).  [Reported failure date:  November 30, 2005].

- This is the 3rd time the torque converter has gone out on our Ford Freestar Van. Two times on the Interstate traveling at interstate speeds leaving my wife stranded

and terrified! This time I experienced it and took it to the transmission shop myself. There seems to be a real problem here 40000 transmissions goes, 90,000 and 97,000. Please help!  [Reported failure date:  December 8, 2005].

(CAC at ¶ 21.)

Before selling the Vehicles to consumers, Ford was aware of the Vehicles' torque converter and transmission failure issues because, *inter alia*, consumers of the Vehicles' predecessor, the Ford Windstar, complained of the same or similar issues that they experienced with the Windstar.  (CAC at ¶ 23.)

Despite its knowledge of the defective condition of the Vehicles' torque converter and resulting failure of the transmission, Ford provided owners and lessees with a mere 3 year or 36,000 mile bumper-to-bumper factory warranty known as the "New Vehicle Limited Warranty."  (CAC at ¶¶ 23, 24.)

Due to the defective nature of the Vehicles' torque converter, the Vehicles' torque converter and transmission are unreliable and do not perform in accordance with the reasonable expectations of Plaintiffs and Class members.  Plaintiffs and Class members, as reasonable consumers, expected that the Vehicles' torque converter and transmission would have a useful life similar to that of conventional torque converters and 4-speed automatic transmissions that come factory-equipped in comparable vehicles.  However, the Vehicles' torque converter and transmission have a markedly reduced useful life, which is a material fact that a reasonable person would consider important in deciding whether or not to purchase (or to pay the same price for) the Vehicle, particularly considering the high repair and/or replacement costs associated with the defective torque converter and resulting transmission failure.  Moreover, Plaintiffs and Class members would, and do, consider the safety considerations that arise during the manifestation of the defect to be material.  Plaintiffs and Class members would not have

purchased, or would have paid substantially less for, their Vehicles had they been informed that the torque converter is defective and has (along with the transmission) a markedly reduced useful life and attendant safety issues.  As such, the Vehicles' torque converter and transmission are unreliable and fail to perform in accordance with reasonable expectations of consumers, including Plaintiffs and Class members.  (CAC at ¶ 25.)

Ford had exclusive knowledge of the reduced useful life of the Vehicles' torque converter and transmission.  Ford had access to relevant data regarding the useful life of the Vehicles' torque converter and transmission and, further, had knowledge as a result of the numerous complaints made by consumers about their Vehicles' torque converter and/or transmission failures.  However, Ford concealed its knowledge of the defective nature of the Vehicles' torque converter and resulting transmission failure from Plaintiffs and Class members.  (CAC at ¶ 26.)

Ford knew, or should have known, of the inherent defect in the torque converter that reduced the useful life of the Vehicles' torque converter and transmission at the time of the marketing, sale and distribution of the Vehicles, particularly given that Ford was aware of the same or similar torque converter and transmission failure issues experienced by consumers of the Vehicles' predecessor, the Ford Windstar.  (CAC at ¶ 27.)

Plaintiffs and Class members have been injured and lost money because they have paid more for the Vehicles than they would have had Ford disclosed material information regarding the Vehicles' defective torque converter and resulting transmission failure, and because they have had to pay to repair and/or replace the Vehicles' torque converter, transmission, and/or related parts, which can range from approximately $1,000 to $3,000, exclusive of towing and other out-of-pocket costs necessitated by the defect.  (CAC at ¶ 29.)

## STANDARD OF REVIEW

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) is properly granted only where a plaintiff has failed to state "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).  In assessing the merits of a Rule 12(b)(6) motion, a court should accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them.  *In re PEC Solutions, Inc. Securities Litigation*, 418 F.3d 379, 387 (4th Cir. 2005). Moreover, it is well established that "all doubts should be resolved in favor of the sufficiency of the complaint when considering a motion to dismiss."  *Pyramid Condominium Ass'n v. Morgan*, 606 F.Supp. 592, 597 (D.Md. 1985).  In its Motion, Ford essentially requests that these standards be turned on their head and that the allegations of the CAC be discounted, while giving Ford the benefit of any doubt.  Such a request cannot stand.  Here, as explained below, the claims asserted in Plaintiffs' CAC are well pled and there simply is no basis for dismissal.

## ARGUMENT

**I.  THE COURT SHOULD DENY FORD'S REQUEST TO DISMISS THE IMPLIED WARRANTY CLAIMS.**

### A.  The Implied Warranty Claims Of Plaintiffs Abraham, Doll, Pollack, Regensburger and The Ziehrs Are Not Barred By The Statute Of Limitations

Ford's motion to dismiss the warranty based claims on statute of limitations grounds fails because Plaintiffs clearly have alleged facts sufficient to toll the statute of limitations.  (CAC ¶¶ 42-45.)  Moreover, because Defendant fraudulently omitted material facts, the pleading requirements of Rule 9(b) are relaxed.  Thus, the facts alleged in the CAC are sufficient to defeat Defendant's statute of limitations defense.

Defendant acknowledges as it must, that, under Maryland law, the statute of limitations governing implied warranty claims is tolled if a cause of action is kept from a party by the fraud of an adverse party.  (Defendant's Memorandum in Support of Motion to Dismiss ("Brief") at 9) (*citing* MD. CTS & JUD. PROC. CODE ANN. § 5-203).[1]  Defendant also admits that the other states at issue have similar statutory or common law doctrines tolling the statute of limitations. *Id*.  Nonetheless, ignoring the applicable law and the allegations of its own knowledge and its concealment of that knowledge contain in the CAC, Defendant argues that the Court should disregard Plaintiffs' tolling allegations because, it asserts, (1) Plaintiffs' fraudulent concealment allegations are not pled with sufficient particularity and (2) Plaintiffs only allege "mere silence" which, according to Defendant, is insufficient to support a claim of fraudulent concealment in the absence of a duty to disclose the alleged defect.   Finally, Defendant argues, futilely that it had no duty to disclose the defect because there was no confidential or fiduciary relationship between Plaintiffs and Ford.  (Brief at 10-11.)

Defendant's arguments lack merit because (1) Defendant's fraudulent concealment arises from the omission of material facts that Defendant was under a duty to disclose; and (2) Plaintiffs allege with sufficient particularity the "circumstances constituting fraud" and, thus, need not aver with particularity Defendant's state of mind.  Specifically,  Plaintiffs aver, *inter alia*, that (i) Defendant was aware of a defect in the torque converter and the corresponding transmission failure in the 2004 and 2005 Freestar and Monterey models (CAC at ¶¶ 21, 23, 27);

---

[1] In the case at bar, the Court exercises diversity jurisdiction over the common law claims. A federal court sitting in diversity must generally apply the law that would be applied by a court of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Brown v. American Broadcasting Co.*, 704 F. 2d 1296, 1299 (4th Cir. 1983).  For choice of law purposes, Maryland treats statutes of limitations as procedural rather than substantive, and applies Maryland law. *Hartnett v. Schering Corp.*, 806 F.Supp. 1231, 1234 (D.Md.1992).

(ii) Defendant knew about this defect at least as early as 2004 (*Id.*); (iii) consumers complained about the torque converter defect and transmission failure as early as January 2004 for the '04 models and April 2005 for the '05 models (CAC at ¶ 21); and (iv) Plaintiffs would have taken different actions had they known about the defect (CAC at ¶¶ 25, 29). These allegations describe the information concealed (*i.e.*, torque converter defect and transmission failure), and state with particularly when and how Defendant became aware of the nature and scope of the defect. These allegations unquestionably satisfy Rule 9(b), where, as here, the alleged fraud arises from concealment of material facts.

In *U.S. Home Corporation v. Settler's Crossing LLC*, No. DKC 2008-1863, 2010 WL 958034 (D. Md. March 11, 2010), the Court observed that "[i]n a fraud case, a plaintiff must prove *either* that the defendant had a duty to disclose a material fact to them and failed to do so, *or* that the defendant concealed a material fact for the purpose of defrauding the plaintiff." *Id.* at *8. The *U.S. Home Corp.* court found that the plaintiff had adequately alleged the second type of fraud claim by (1) quoting a written representation concerning the non-presence of hazardous materials on a tract of land and (2) generally averring that the defendant knew that the written representation concerning hazardous materials was false. *Id.* The Court further noted that "the United States Court of Appeals for the Fourth Circuit ("fourth circuit") has held that a court should hesitate to dismiss a complaint under Rule 9(b) 'if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.'" *Id.* at *9 (internal citations omitted). Here, the CAC clearly meets, and exceeds, the standard set forth in *U.S. Home Corp.* and adequately alleges the circumstances surrounding the concealment of facts with as much particularity as required.

Similarly, in *Butcher v. Robert Shaw Controls Company*, 550 F. Supp. 692 (D. Md. 1981), the plaintiff alleged that the defendants had fraudulently concealed from the Consumer Product Safety Commission ("CPSC") numerous injuries resulting from defective water heaters because they were required to report such injuries and defects. *Id.* at 701. The *Butcher* court observed that the allegations of (1) defendants' knowledge of numerous accidents resulting in injury and property damage, (2) defendants' failure to issue product warnings, and (3) their failure to fully report the number of incidents and the existence of a defect to the CPSC provided sufficient particularity to satisfy Rule 9(b). *Id.* As noted above, the CAC alleges, with particularity, the specific defect that Ford failed to disclose, that the defect in the torque converter was safety-related, that Ford knew of numerous complaints about the defect, that Ford was under an obligation to report the safety-related defect, and that it failed to do so.

Furthermore, the court in *Butcher* also observed that the allegation that defendants deliberately kept silent for 26 years regarding the dangers inherent in the normal use of a water heater was sufficient to toll the statute of limitations under § 5-203. *Id.* at 703. The court further noted that "the fraud referred to in § 5-203 may be an actual concealment of facts or it may be of such character as to conceal itself, so long as the plaintiff remains in ignorance without any lack of diligence on his part." *Id.* at 703-704 (*citing Brack v. Evans*, 203 Md. 548, 555, 187 A.2d 880, 884 (1963) ("the fraud may be either an actual concealment of facts, or the fraud may be of such a character as to conceal itself, whereby the plaintiff remains in ignorance without any lack of diligence on his part, and it is not necessary to constitute such fraud, that there shall be any special effort on the part of the defendant in the way of concealment."). The defect at issue in this case, similar to the defect in *Butcher*, is not open and obvious and consumers only learn

about the defect when the product fails.  Here, as in *Butcher*, the allegations are sufficient to toll the statute of limitations.

Though the CAC adequately alleges with sufficient particularity the circumstances supporting the claim of fraudulent concealment, courts have recognized that when the concealment involves omissions of material fact by a corporate entity, Rule 9(b)'s particularity requirement is necessarily relaxed.  *Zwicker v. General Motors Corporation*, No. C07-0291-JCC, 2007 WL 5309204, at *4 (W.D. Wa. July 26, 2007).  This relaxed standard is recognized because "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim," *Falk v. General Motors Corp.*, 2007 WL 1970123, at *8 (N.D. Cal. 2007), and "plaintiffs will not have personal knowledge of all of the underlying facts" such as the identities of particular defendants.  *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 540 (9th Cir. 1989).  Under this standard, the CAC clearly satisfies the purpose and requirements of Rule 9(b).[2]

With respect to Defendant's argument that it owed Plaintiffs no duty to disclose the safety defect, Defendant erroneously assumes that only a confidential relationship can give rise to a duty to disclose.  Though a confidential relationship can certainly give rise to a duty to disclose material facts, in *Butcher*, *supra*, the court found that a statutory duty to disclose manufacturing defects to a government agency supported fraudulent concealment allegations <u>for purposes</u> of tolling the statute of limitations.  *See also In Re Ford Ignition Switch Products*, MDL No. 1112, 1999 WL 33495352, at *11 (D.N.J. May 14, 1999) (opinion vacated in part on denial of reconsideration, 1999 WL 34824273, at *3 (D.N.J. 1999)) (finding that plaintiffs had

---

[2] This approach to Rule 9(b) finds further justification in the long-standing policy of Maryland that disfavors dismissal on the basis of statute of limitations.  *Coakley & Williams, Inc. v. Shatterproof Glass Corp.*, 706 F. 2d 456, 463 (4th Cir. 1983).

adequately pled fraudulent concealment for purposes of tolling the statute of limitations on

grounds that Ford had not disclosed a safety defect that subsequently became the subject of a

NHTSA investigation).

Moreover, as noted below, each of the relevant consumer protection statutes asserted in

this case impose an obligation to disclose safety-related defects that a defendant is in a superior

position to know about and that the plaintiff cannot readily discover.  Here, a disclosure duty

grounded in consumer protection statutes is thus sufficient to support a finding that Defendant

fraudulently concealed the torque converter defect for purposes of tolling the statute of

limitations.  *See Falk v. General Motors Corporation*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal.

2007); *see also Zwicker,* 2007 WL 5309204, at *4.[3]

### B.       The Court Should Not Dismiss Implied Warranty Claim Based On Lack Of Privity

Ford argues that the implied warranty claims of Abraham and the Ziehrs fail because of

an alleged lack of privity between Ford and those Plaintiffs.  Simply put, it is wrong.  Both

Illinois and New York case law deem privity requirements satisfied where, as here, the vehicle is

---

[3] *Estate of White ex. rel. White v. R. J. Reynolds Tobacco Co.*, 109 F. Supp. 2d 424 (D. Md. 2000) did not involve tolling of the statute of limitations.  The discussion of fraudulent concealment arose in the context of a civil conspiracy claim based on fraud.  In *Weiner v. Armstrong Cork Co.,* 7 Pa. D. & C. 3d 470, 1978 WL 23458 (P. Com. Pl. 1978), the court recognized that a latent product defect resulted in the defect not being discovered.  Though it consider the matter a "close call," the court ultimately found that the four-year statute of limitations for warranty claims was not tolled by mere silence because (1) the defect had not caused injury (*i.e.* it was not safety related) and (2) the plaintiff had not alleged that the defendant had knowledge of the defect.  *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 523 (D.N.J. 2008), is distinguishable on two separate grounds: (1) the alleged latent defect was not safety related and (2) more importantly, the court noted that plaintiffs had only alleged that defendant knew about the defect and did not warn consumers.  The court held that "in the context of an express warranty claim" this allegation of concealment was insufficient to toll the statute of limitations.  The court denied the motion to dismiss as to the implied warranty claims because neither party had adequately discussed whether the same allegations of concealment were sufficient to toll the limitations period on an implied warranty claim.

purchased through an agent of the manufacturer, *i.e.*, an authorized Ford dealership.  Moreover,

as acknowledged in Ford's Brief, New York also eschews any privity requirements in implied

warranty cases where the product at issue is inherently dangerous.  At issue in this case is a

defect that renders the Freestar dangerous and unsafe.  As the CAC details, the defective torque

converter can immediately – without warning – anytime, anywhere – shut down the operability

of the transmission.  (CAC at ¶¶ 19-20.)  Moreover, this failure, as in the case of Plaintiffs, can

and does occur in heavy traffic and at highway speeds, forcing drivers to maneuver and hope to

coast to safety without the benefit of a working transmission.  Accordingly, Plaintiffs have

properly pleaded implied warranty claims and Defendant's Motion on this issue should be

denied.

1.    <u>Plaintiff Abraham Has Satisfied Any Illinois Privity Requirement</u>

Defendant proffers a conclusory two sentence argument that Abraham's implied warranty

claim under Illinois law fails due to a purported lack of privity.  (Brief at 11-12)  To that end,

Defendant asserts that it is not liable under an implied warranty theory because Abraham

"purchased his vehicle from a Ford dealership and not directly from Ford," (*Id.* at 11), Defendant

is not liable under implied warranty theories.  Defendant's attempt to avoid liability in this

manner is unavailing and shameless, particularly since its argument has recently been rejected in

federal cases interpreting Illinois law.

 In *Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009 (N.D.Ill. 2008), defendant

moved to dismiss plaintiff's implied warranty claims on the ground that there was no privity of

contract between the plaintiff and defendant because a middleman-dealer had purchased the

vehicle from defendant and then sold it to plaintiff.  *Id.* at 1024.  The *Semitekol* court rejected

this argument, reasoning that plaintiff had plead sufficient facts to establish that an agency

- 13 -

relationship existed between the defendant-manufacturer and the dealer, which could preserve privity between the manufacturer and plaintiff. *Id.* at 1024-1026. The *Semitekol* court ruled, *inter alia,* that allegations in the complaint such as ones stating that the dealer was an "authorized . . . dealership" of the manufacturer sufficiently pleaded facts that could give rise to an agency relationship that could maintain privity. *Id.* at 1025. Along these lines, the CAC pleads that Abraham purchased his Vehicle from "an authorized Ford Dealership," thereby satisfactorily pleading an agency relationship. (CAC at ¶ 6.)

Moreover, *Semitekol* recognized that whether an agency relationship was ultimately established in this context was a fact-intensive inquiry and therefore improper at the pleading stage. *Semitekol*, 582 F. Supp. at 1024 ("The Court agrees that whether an agency relationship has been established between the parties is one of fact which is not properly resolved on a motion to dismiss.") (citations omitted). Thus, also on this separate basis, the *Semitekol* court denied the defendant's motion to dismiss. *Id.*

The issue before this Court is virtually identical to the one addressed by *Semitekol* and the result should, likewise, be the same. Defendant's Motion should be rejected because the CAC pleads sufficient facts to allege privity of contract between Abraham and Ford via an agency relationship between Ford and its authorized dealer.

2.      The Ziehrs Have Satisfied Any New York Privity Requirement

Defendant's argument for dismissal of the Ziehrs' New York claims fails for at least two reasons. First, New York, like Illinois, recognizes that privity of contract can exist via an agency relationship. In *Gordon v. Ford Motor Co.*, 657 N.Y.S. 2d 43, 43 (N.Y. App. Div. 1st Dep't 1997), the court denied defendant's summary judgment motion on the grounds that "privity [will] exist if the dealerships with which plaintiffs dealt were defendant's sales or leasing

agents." *Id.*  Thus, for the reasons discussed directly above, Defendant's Motion fails because the CAC adequately pleads an agency relationship between Ford and its authorized dealerships. (CAC at ¶12.)

Second, Defendant's argument fails because any privity of contract requirements for implied warranty claims are eliminated in instances where the product at issue is a "thing of danger."  *See, e.g., Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 191 (N.D.N.Y. 2009) (reasoning that "'where an article is of such a character that when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the vendor is liable, for breach of law-implied warranties, to the persons whose use is contemplated.'") (*quoting Hubbard v. Gen. Motors Corp.,* 1996 WL 274018, at *5 (S.D.N.Y. 1996)).  Defendant recognizes this privity exception but attempts, unsuccessfully, to reconcile recent decisions that are contrary to its position.  (Brief at 12-13)  Defendant's position lacks support, however, as the "thing of danger" exception is both well-established in New York and has been reaffirmed recently in federal court decisions. *See e.g., In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, MDL No. 1687, 2010 WL 2813788, at *73-74 (D.N.J. July 9, 2010).

The CAC sufficiently pleads that the Vehicles are "things of danger" under New York law.  Specifically, Plaintiffs provide detailed allegations regarding the inherent risks associated with the Vehicles, such as:  "Vehicles [] lose the ability to maintain speed or accelerate, suddenly and without warning, rendering the Vehicles either entirely inoperable or barely maneuverable. This sudden failure can occur at anytime when the Vehicles are in operation . . . ."  (CAC at ¶ 19.)  Moreover, the CAC alleges that the defect "poses a significant safety hazard for drivers and passengers of the Vehicles, as well as for other vehicles traveling on public highways and

streets;" that travel in the Vehicles is both "insecure and hazardous;" Class members "have been and will continue to be forced to drive with a defect that is a significant safety concern;" and further, that the National Highway Traffic Safety Administration launched an investigation into the Vehicles regarding complaints pertaining to transmission failures."  (CAC at ¶¶ 2-3, 19-20, 30.)  In sum, Plaintiffs have pled ample facts to support a finding that the Vehicles are dangerous, thereby satisfying the privity of contract exception to this implied warranty claim.

> ### C.   The Implied Warranty Claims of Plaintiffs Abraham, Doll, Mixon and Regensburger Should Not Be Dismissed Because The Plaintiffs Gave Adequate Notice

The CAC alleges that Plaintiffs provided "sufficient and timely notice to Ford regarding the problems they experienced."  (CAC at ¶ 64.)  Specifically, the CAC  alleges that Plaintiffs provided notice of the problems <u>they</u> experienced with their Vehicles and is not simply notice regarding a generalized problem that <u>others</u> have reported.  Plaintiffs' allegations here vary greatly from those discussed in the case relied upon by Defendant, *Aqualon Co. v. MAC Equip. Inc.*, 149 F.3d 262 (4th Cir. 1998).  In *Aqualon*, the court found a general allegation that the defendant was aware of the problems with a product line to be inadequate for purposes of defeating a summary judgment motion.  *Id.* at 266.  Clearly, that is not what Plaintiffs have alleged here.  Moreover, the allegation that Plaintiffs provided notice concerning problems with <u>their</u> Vehicles, and that they personally experienced these problems, is unquestionably sufficient. *See Connick v. Suzuki Motors Company, Ltd.*, 174 Ill. 2d 482, 494, 675 N.E.2d 584 (Ill. 1996) (noting that allegation of generalized knowledge of safety concerns of third parties is insufficient to fulfill plaintiffs' UCC notice requirement but that towing the vehicle to a dealership for repair of the defective part is sufficient notice).  Further, Defendant cites no authority for the proposition that the notice requirement must be pled with greater specificity than the allegations

contained in the CAC. Finally, the Court should not require any greater specificity than that contained in paragraph 64 of the CAC because, in the context of this case, the notice requirement is an affirmative defense. Courts are wary of dismissing a complaint on the grounds of an affirmative defense. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (instructing that instances in which cases are dismissed on the basis of an affirmative defense are rare).

1.   Plaintiff Abraham Gave Adequate Notice Under Illinois Law

Under Illinois law, direct notice is not required where, as here, a defendant has actual knowledge of the product's defect. In *Schreib v. Walt Disney Co.*, No. 1-05-0094, 2006 WL 573008 (Ill. App. Feb. 1, 2006), although the court affirmed dismissal of the plaintiff's implied warranty claim for failure to provide pre-suit notice, it acknowledged that, under the holding in *Connick v. Suzuki Motors Company, Ltd.*, 675 N.E.2d 584 (Ill. 1996), "direct notice is not required if the seller has 'actual knowledge' of the particular product's defect." *Id*. at *5. There, the court rejected plaintiffs' reliance on *Connick* because, unlike here, they only alleged a general knowledge about problems with a product line.

Here, Plaintiffs have met the *Connick* exception to direct notice because Plaintiffs allege that, several months prior to their filing suit, NHTSA elevated its investigation to an engineering analysis of the torque converter defect found in 2004 and 2005 Freestar and Monterey models. The CAC also alleges that Ford provided NHTSA with information about numerous complaints regarding the specific defect that Plaintiffs have since filed suit over. Moreover, the CAC alleges that due to similar issues with its Ford Windstar vehicles, Ford was on notice of the defect prior to selling the Vehicles. (CAC at ¶ 23.) More importantly, Abraham alleges that after the torque converter and transmission failed, the Vehicle was "towed to the dealership" for

repair and that the Vehicle was repaired.  (CAC at ¶ 32.)  Under Illinois law, such an allegation is

clearly sufficient to satisfy the notice requirement.  *Connick*, 675 N.E.2d at 590  (*citing Overland*

*Bond & Investment Corp. v. Howard*, 9 Ill. App.3d 348, 292 N.E. 2d 168 (1972) for the

proposition that actual knowledge satisfied notice requirement where the car was towed to the

seller's auto dealership and seller's employees were told that the car needed major repairs); *see*

*also Malawy v. Richards Manufacturing Co.*, 150 Ill. App. 3d 549, 501 N.E. 2d 376 (1986) (also

cited by the *Connick* court for the proposition that actual knowledge satisfied notice requirement

where seller hospital removed defective medical device from plaintiff).

2.   <u>Plaintiff Doll Gave Adequate Notice Under Maryland Law</u>

Maryland case law makes it clear that, under the facts alleged in the CAC, Doll has

satisfied any notice requirements.  In *Firestone Tire & Rubber Co. v. Cannon*, 53 Md. App. 106,

452 A.2d 192 (1982), the plaintiff suffered damages as a result of a defective tire.  The plaintiff

did not notify the manufacturer prior to filing suit, but did inform the seller of the accident or

"occurrence."  Defendant moved to dismiss on grounds that plaintiff had not provided notice

prior to filing suit.  The court held that a buyer may sue a person (other than his immediate

seller) for breach of implied warranty without having to give that person timely notice of the

alleged defect.  *Id.*  (framing the narrow issue as "[d]oes Md.Code Ann., Comm.Law art. § 2-

607(3)(a) require a buyer to give notice of a claimed breach of implied warranty to a 'remote'

seller-someone in the marketing chain other than the person from whom he bought the goods?).

Though the court noted that the manufacturer had to rely on downstream distributors to provide

notice of the defect (assuming that notice will allow the manufacturer to mitigate damages), the

court ultimately concluded that the manufacturer could not assert, as a defense, the buyer's

- 18 -

failure to provide notice.[4]   Indeed, the court observed that "[i]f there is to be a hardship, it will have to fall on the manufacturer or distributor who placed or maintained the defective goods in the marketing stream." *Id*. The "hardship" referenced is a failure of notice.

In any event, the court observed that the plaintiff had provided notice of the "occurrence" to the seller. *Id*. at 108. Thus, even under the holdings in *Lloyd* and *Connick*, the notice requirement is satisfied if the seller is informed of the problem with the product at issue in the case. Doll alleges that the vehicle was towed to the dealership for repairs and that he paid for repair of the torque converter. (CAC at ¶ 33) These allegations are more than sufficient to satisfy any notice requirement.

3.   Plaintiff Mixon Gave Adequate Notice Under South Carolina Law

South Carolina does not require a buyer to provide the manufacturer notice of a defect as a condition for filing an implied breach of warranty claim against the manufacturer. *Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505, 513 (D.S.C. 2007). Thus, Mixon was not required to notify Ford of the torque converter defect he experienced with his Vehicle and the repairs he made and paid for prior to filing suit. In any event, the allegation of notice contained in paragraph 64 of the CAC is sufficient, especially in light of South Carolina law that (1) notice to

---

[4] Plaintiffs recognize that in *Lloyd v. General Motors Co.*, 575 F. Supp. 2d 714 (D. Md. 2008), the court held that the manufacturer could raise as an affirmative defense the plaintiff's failure to notify the immediate seller of the problem. Because the Doll provided notice to the dealership, this holding is inapposite. (CAC at ¶ 33.) Other courts addressing this issue have reached the conclusion that the manufacturer cannot raise the failure of notice to the seller as a defense. *See Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505, 513 (D.S.C. 2007) (rejecting defendants argument that a class cannot be certified because there is no requirement that the plaintiffs and putative class members give notice to defendants [*i.e.* manufacturers], no individualized inquiry in that regard is necessary.) Additionally, even if the Defendant in this case can raise as an affirmative defense the issue of notice to an immediate seller, there are strong arguments for excusing this requirement under a doctrine of futility. *See Spartanburg County School Dist. Seven v. U.S. Gypsum*, 842 F. 2d 1292, at *2 (4th Cir. 1988) (noting that availability of a futility excuse for failing to provide notice).

a manufacturer is not required.  *See Spartanburg County School Dist. Seven v. U.S. Gypsum*, 842 F. 2d 1292, at *2 (4th Cir. 1988) (*citing Simmons v. Ciba-Geigy Corp.*, 279 S.C. 26, 302 S.E. 2d 17, 28 (S.C. 1983).

4.   Plaintiff Regensburger Gave Adequate Notice Under Pennsylvania Law

The filing of a complaint alleging a breach of implied warranty satisfies the notice requirement under Pennsylvania law.  In *In Re Ford Motor Co. E-350 Van Products Liability Litigation*, 2010 WL 2813788 (D.N.J. July 9, 2010), the court, after examining Pennsylvania case law, concluded that under Pennsylvania law, the filing and service of a complaint constitutes sufficient notice under §2607, the UCC notice provision cited by the Defendants.  *Id.* at *39-40.  The court specifically rejected Ford's argument that Pennsylvania law only allows a complaint to constitute §2607 notice when the plaintiff alleges personal injury resulting from a breach of warranty.  The court also noted that in *Solarz v. DaimlerChrysler Corp.*, No. 2033, 2002 WL 452218, at *12 (Pa. Com. Pl. Mar. 13, 2002), the state court rejected defendant's argument that the complaint can only serve as notice under §2607 when consumer buyers suffer personal injury.  As a result, Regensburger has provided sufficient notice under Pennsylvania law and Defendant's Motion should be denied.

**D.   Plaintiffs' Complaint Adequately Alleges That Defendant Breached The Implied Warranty Of Merchantability**

Defendant's final argument on the implied warranty claim fails for a number of reasons. First, and perhaps most importantly, the arguments are not appropriately decided on a motion to dismiss.  Indeed, Defendant asks the Court to decide (without the benefit of discovery) that the knowing inclusion, and systematic failure, of torque converters and transmissions in thousands of 2004-2005 Ford Freestars and Montereys is simply "business as usual" in the automobile industry.  (*See* CAC at ¶ 20, detailing over 2,700 complaints.)  Defendant argues that Plaintiffs

drove their Vehicles for several years without problem and that, as a result, they have no basis

for complaining about transmission failures because "virtually every vehicle owner has made or

will eventually need to make" a repair to the torque converter and the transmission.

Among the many flaws in Defendant's argument is that whether a specific defect

breaches the implied warranty of merchantability depends on an analysis of facts outside the

scope of a Rule 12(b)(6) motion.  In this case, Plaintiffs have alleged that "the defective torque

converter and transmission have a useful life less than that of a conventional torque converter

and transmission" and that the "Vehicles do not provide a safe or reliable mode of

transportation" because of the "sudden occurrence of a loss of ability to maintain speed or

accelerate" associated with the defect.  (CAC at ¶¶ 25, 57.)  NHTSA's elevation of its

investigation from a preliminary inquiry to an "engineering analysis" supports Plaintiffs'

contention that the defective torque converter and attendant transmission failure render the

vehicle unsafe.  (CAC at ¶ 20.)  Moreover, the CAC is replete with allegations regarding Ford's

knowledge of the defect and its concomitant failure to disclose the defect to Plaintiff and other

consumers.

These allegations are clearly sufficient to survive a Rule 12(b)(6) motion because they

allege facts that, if true, support liability on an implied warranty claim.  "With regard to

automobiles, the implied warranty of merchantability not only warrants that the automobile will

operate effectively, but that it will provide <u>reasonably safe</u> transportation." *Lloyd v. General

Motors Corporation*, 397 Md. 108, 157, 916 A. 2d 257, 285 (Md. 2007); *Pearson v.

DaimlerChrysler Corp.*, 349 Ill. App. 3d 688, 698-699, 813 N.E. 2d 230, 239 (Ill. App. 2004)

(observing that "[w]ith regard to automobiles, fitness of the ordinary purpose of driving implies

that the vehicle should be in a safe condition and substantially free of defects.); *Carlson v.*

*General Motors Company*, 883 F. 2d 287, 293 (4th Cir. 1989) (interpreting South Carolina law on merchantability to mean that since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a "safe condition" and "substantially free of defects." ) (citations omitted).

The definition of merchantability incorporates trade quality standards and the consumer's reasonable expectations into the concept of merchantability. *Yong Cha Hong v. Marriott Corp.,* 656 F.Supp. 445, 449 (D.Md.1987); *Jones v. Koons Automotive, Inc.*, No. DKC 09-3362, 2010 WL 4449388, at *10 (Nov. 5, 2010) (observing that "[w]hether a good is merchantable also depends in part on usage of trade; "This definition of merchantability incorporates trade quality standards and the consumer's reasonable expectations into the concept of merchantability." (internal citations omitted)). The mere fact that the latent safety defect manifests itself after several years of usage does not, contrary to Ford's suggestion, entitle the manufacturer to dismissal of an implied warranty claim. Rather, the court must examine whether the particular defect renders the vehicle unmerchantable based on "trade quality standards and consumers' reasonable expectations." *See e.g. Cox House Moving, Inc. v. Ford Motor Co.*, No. 7:06-1218-HMH, 2006 WL 2303182, at *5 (D.S.C. Aug. 8, 2006). Such a determination is unquestionably more appropriate after the development of a factual record that is not available at this stage.

Moreover, even Defendant's Brief recognizes that "safety defects" are in a different category than the defects at issue in the cases Defendant cites in support of its Motion. For example, in *Sheris v. Nissan N. Am. Inc.*, No. 07-2516 (WHW), 2008 WL 2354908 (D.N.J. June 3, 2008), plaintiff complained that the brake pads for his leased vehicle prematurely wore out after two years and damaged the rotor. *Id.* at *3. The case did not implicate the type of safety concerns preset here and, indeed, are materially different from Plaintiffs' allegations regarding a

transmission failure that results in a sudden loss power.  As a result, *Sheris* does not support Defendant's position.

Defendant's reliance on *Priebe v. Autobarn Ltd.*, 240 F.3d 584 (7th Cir. 2001) is equally unavailing.  In *Priebe*, plaintiff complained that the seller failed to disclose that the used vehicle he purchased had been in a prior accident.  He learned of the prior accident after taking the car in for repairs.  The plaintiff alleged that knowledge of the prior accident made him lose faith in the safeness of his vehicle.  *Id.* at 588.  As in *Sheris*, the facts in *Priebe* are materially different than a sudden transmission failure resulting from a defective torque converter, a defect that all of the Plaintiffs' Vehicles experienced while in motion and without any warning.

## II.   PLAINTIFFS HAVE ADEQUATELY PLED CONSUMER PROTECTION ACT CLAIMS

### A.   Plaintiffs Have Pled Their Allegations With The Required Particularity

As Defendant recognizes, Plaintiffs' claims are based upon omissions.  As discussed herein, each of the consumer protection acts at issue allow for causes of action based on omissions.[5]  As a result, and as Defendant itself recognizes, Defendant's argument that Plaintiffs have failed to allege fraud by *misrepresentation* with particularly is inapposite and irrelevant.

### B.   Plaintiff Garcia Has Adequately Plead A Cause of Action Under The Florida Unfair Trade Practices Act

Ford asserts, without merit, that Garcia's Florida Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"), claim should be dismissed because there is no connection

---

[5] The two statutes cited by Defendant, the Maryland Consumer Protection Act, Md. Code Ann., Commercial Law § 13-101, *et seq.*, and the New York Deceptive Trade Practices Act, New York Gen. Bus. Law § 349, *et seq.*, both recognize omission-based claims.  *See* Md. Code Ann., Commercial Law § 13-301 (expressly recognizing claims based on omissions under Maryland Consumer Protection Act); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 26 (1995) ("objective definition of deceptive acts and practices" includes "misrepresentations or omissions" under New York Law).

between Ford's omissions and damages to Garcia.  Ford's half-hearted argument, which relies once again upon an intentional misreading of the CAC and applicable case law, should be summarily rejected.

The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce" and is expressly intended to be construed liberally.  Fla. Stat. § 501.202(2).  FDUTPA states that unfair methods of competition, unconscionable acts and practices and unfair or deceptive acts in the conduct of trade and commerce are unlawful.  Fla. Stat. § 501.204(1).  An unfair practice is "one that 'offends established public policy,' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers'" or one where there is a representation, ***omission*** or practice that is likely to mislead a reasonable consumer.  *PNR, Inc. v. Beacon Property Management, Inc.*, 842 So.2d 773, 777 (2003) (emphasis added).

With respect to Garcia's FDUTPA claim, Garcia asserts that Ford engaged in deceptive and unfair practices that caused damages to him.  Specifically, the CAC asserts that Ford marketed and sold the Vehicles to Garcia and thousands of other consumers when it knew, prior to Garcia, and other consumer, purchase of the Vehicles, that the Vehicles' torque converter were improperly designed, causing, *inter alia*, the transmission and torque converter to fail well in advance of what is reasonably expected by a consumer.  (CAC at ¶¶ 21, 23.)  Furthermore, it is alleged that Ford concealed its knowledge regarding the defect -- gained due to similar concerns and issues experienced by the Vehicles' predecessor, the Ford Windstar -- and that, despite its receipt of numerous complaints, Ford has refused to correct the defect or notify its consumers.  (CAC at ¶¶ 23, 27, 39-41.)  Through, *inter alia*, these omissions, Ford engaged in

unfair and deceptive acts or practices in the conduct of trade or commerce, which caused damage to Garcia and other members of the Florida Class, who would not have purchased the Vehicles had Ford disclosed the existence of the defect.  (CAC at ¶¶ 94-95)  Simply put, marketing and selling a vehicle with a known defect, and failing to disclose the defect, clearly constitutes actionable conduct under FDUTPA.  *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. 1st DCA 2000) (certifying class action in product defect case because FDUTPA prohibits any "unfair or deceptive acts or practices in the conduct of any trade or commerce").

The one case cited by Defendant, *Gen. Motors Acceptance Corp. v. Laesser*, 718 So.2d 276 (Fla.Ct.App. 1998), simply stands for the unremarkable proposition that there must be a causal link between an unfair or deceptive trade practice and damages to the consumer.  *Id.* at 277.  Plaintiffs have clearly alleged that, absent the omissions by Defendant, Garcia would not have purchased his Vehicle, and that he was damaged by having to pay for repairs to the torque converter and by diminution in value of the Vehicle he purchased.  (CAC at ¶¶ 94-95)  Clearly, this establishes the requisite link between Defendant's omissions and damages to Garcia. In addition, although Garcia has pled his FDUPTA claim with the particularity required by Rule 9(b), he is not required to do so.  *See Galstaldi v. Sunvest Communities USA, LLC*, 637 F.Supp.2d 1045, 1058 (S.D.Fla. 2009) ("The requirements of Rule 9(b) do not apply to claims under the FDUTPA."); *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. 1st DCA 2000) ("The plaintiff need not prove the elements of fraud to sustain an action under the [FDUTPA]."). Therefore, Defendant's Motion to Dismiss Garcia's FDUPTA claim should be denied.

### C.   Plaintiff Doll Has Adequately Plead A Cause Of Action Under The Maryland Consumer Protection Act

Once again ignoring the actual allegations of the CAC, Defendant cherry-picks several allegations in order to suit its purpose and argues, without merit, that Doll's Maryland Consumer

Protection Act, Md. Code Ann., Comm. Law, § 13-101, *et seq.*, ("MCPA") claim should be dismissed because Plaintiffs purportedly failed to allege that Ford had actual knowledge of the defect.  This argument not only ignores the CAC, it also misstates applicable law.  First, Plaintiffs allege in the CAC that "before selling the Vehicles to consumers, Ford was aware of the Vehicles' torque converters and transmission failure issues" and "Ford had exclusive knowledge of the reduced useful life of the Vehicles' torque converter and transmission." (CAC at ¶¶ 23, 26.)  Clearly, Plaintiffs have pled that Ford had actual knowledge of the defect.  Further, despite  Ford's legal contortions, Maryland does recognize claims under the MCPA based on allegations that a defendant "knew or should have known" of a defect.  *Davis v. Goodman*, 700 A.2d 798, 820 (Md.App.1997) (recognizing the possibility of a cause of action under the MCPA based on what defendant "knew or should have known").

The only case cited by Defendant, *Adams v. NVR Homes, Inc.*, 135 F.Supp.2d 675 (D.Md. 2001), deals exclusively with MCPA violations in the context of landlord/tenant disputes.  Even that case recognizes, however, that a defendant can be held liable under the MCPA if the defendant "knows or has reason to know of the defect."  *Id.* at 694 (*quoting Hayes v. Hambruch*, 841 F.Supp. 706, 714 (D.Md. 1994)).  Here, Plaintiffs have alleged not only that Ford knew or should have known (had reason to know) of the defect in the Vehicles, but also that Ford had actual knowledge of the defect.  As a result, Defendant's Motion to Dismiss Doll's MCPA claim should be denied.

### D.      Plaintiff Pollack Has Adequately Plead A Cause Of Action Under The Maine Unfair Trade Practices Act

Once again, Defendant ignores the allegations of the CAC in order to make a misguided argument that one of Plaintiffs' consumer protection act claims should be dismissed.  Here, Defendant argues that "providing a limited warranty cannot be an 'unfair or deceptive act[] or

- 26 -

practice[]' within the meaning of the [MUTPA]." (Brief at 22.) Such an argument clearly

ignores the allegations of the CAC. First, Plaintiffs do not contend that providing a limited

warranty, in and of itself, constitutes a violation of the Maine Unfair Trade Practices Act, 5

M.R.S.A. § 205-A, *et seq.*, ("MUTPA"). Pollack's allegation is that Defendant violated the

MUTPA by limiting its warranties on the Vehicles ***when it knew that the Vehicles*** were

defective. (CAC at ¶ 110.) Courts in Maine have found that such deception in the negotiation of

a contract is unconscionable. *Blither v. Packard*, 115 Me. 306, 314 (1916). Defendant's

argument also ignores Maine's long-standing abhorrence for unconscionable warranty

provisions.[6] The only Maine case cited by Defendant, *MacCormack v. Brower*, 948 A.2d 1259

(Me. 2008), discusses the MUTPA generally but contains no discussion on unconscionable

warranties. The other, out of jurisdiction, cases cited by Defendant are also unavailing.[7]

---

[6] Maine is the only jurisdiction to adopt a Uniform Commercial Code provision which provides that "violations" of the Code constitute *per se* violations of the MUTPA. *Tierney v. Ford Motor Co.*, 436 A.2d 866, 872 (Me. 1981).

The Statement of Fact accompanying the Legislative Document (L.D. 1042), which enacted the relevant portion of the Maine U.C.C., states:

> Maine consumers are customarily required to waive or limit any and all warranty rights granted to them under the provisions of the Uniform Commercial Code. In the purchase of automobiles, mobile homes, appliances and a great many necessities, the Maine consumer is forced to release his warranty rights under the U.C.C. and accept in their place warranties which are oftentimes meaningless and unconscionable.

> While the waiver or limitation of such warranty rights is certainly a valid and reasonable commercial concept in a contract bargaining session between two business enterprises, it has been grossly abused by the business community in its dealings with Maine consumers who are forced to accept contract terms which are dictated solely by the seller. *Id.*

[7] *Smith v. Ford Motor Co.*, No. C-06-00497 MMC, 2010 WL 3619853 (N.D.Cal. Sept. 13, 2010) was decided at the summary judgment, rather than motion to dismiss, stage where the court found no evidence that the defendant had knowledge of the defect. *Id.* at *10. *Kraft v. Staten Island Boat Sales, Inc.*, No. 09 Civ. 4157(RJS), 2010 WL 2102633 (S.D.N.Y. 2010), *Ball v. Sony Elecs. Inc.*, No. 05-C-307-S, 2005 WL 2406145 (W.D. Wisc. Sept. 28, 2005) and *Lopez v. Washington Mut. Bank, F.A.*, No. 1:09-CV-1838 AWI JLT, 2010 WL 1558938 (E.D. Cal. April

Even if the Court finds that the limitations on Defendant's warranty are not unconscionable, despite the allegations that Defendant knew the Vehicles were defective, Plaintiffs have still pled a violation of the MUTPA.  An act or practice is deceptive, and violates the MUTPA, if it is a material representation, omission, act or practice that is likely to mislead consumers acting reasonably under the circumstances.  A material omission "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *State v. Weinschenk*, 868 A.2d 200, 206 (Me. 2005) (citations omitted). An act or practice may be deceptive, within the meaning of MUTPA, regardless of a defendant's good faith or lack of intent to deceive. *Binette v. Dyer Library Assoc.*, 688 A.2d 898, 906 (Me. 1996).  Here, in addition to allegations that Ford violated the MUTPA by inserting an unconscionable provision into its warranty, Plaintiffs allege that Ford violated the MUTPA by fraudulently concealing from and/or intentionally failing to disclose the existence of the defect in the Vehicles and the true nature and costs associated with the Vehicles.  (CAC at ¶¶ 110-111.) Plaintiffs also allege that Defendant violated the MUTPA by selling Vehicles that could not be reasonably repaired and instead require prohibitively high costs to repair or replace the torque converter, transmission, and/or related parts.  (CAC at ¶ 112.)  Plaintiffs further allege that had Defendant disclosed the information it failed to disclose, Pollack, and other members of the Maine Class, would not have purchased the Vehicles.  (CAC at ¶ 118.)  These allegations are clearly sufficient to plead a violation of the MUTPA and Defendant's Motion to Dismiss Pollack's MUTPA claim should be denied.

---

19, 2010) did not involve allegations that the defendant had knowledge of the defect at the time of sale.  The decision in *Omron Elec. Components LLC v. Thinklogical, Inc.*, No. 09 C 953, 2009 WL 4823905, (N.D.Ill. Dec. 9, 2009) was based on the finding that there were no plausible allegations of unconscionability, which, as discussed above, is not the case here.

**E.** **Plaintiff The Ziehrs Have Adequately Plead A Cause of Action Under The New York Deceptive Trade Practices Act**

Ford argues that omissions can only make out a claim for causation if they render specific representations false. Ford's interpretation of New York law is incorrect. The case that Ford cites for this proposition, *Henry v. Rehab Plus, Inc.*, 404 F.Supp. 2d 435 ( E.D.N.Y. 2005), although containing language that could be read to that effect, cites for its authority a federal securities law decision that has no application to claims under the New York Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*, ("NYDTPA") and which does not stand for the proposition for which its cited. *Id.* at 445 (*citing Fogarazzo v. Lehman Bros.*, 341 F.Supp.2d 274 (S.D.N.Y. 2004).

The NYDPTA broadly protects consumers from deceptive business practices conducted in New York. *See* N.Y. Gen. Bus. Law § 349 (McKinney 2004); *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir.2005) ("§ 349 extends well beyond common-law fraud to cover a broad range of deceptive practices"); *Blue Cross & Blue Shield of N.J. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 205 (2004) ("the scope of the statute is intentionally broad, applying to virtually all economic activity") (internal quotation marks and citations omitted).

Under the NYDTPA, "'[d]eceptive acts' are defined objectively, as acts 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir.2003) (quotation omitted). Moreover, it is well established that omissions may provide the basis for such claims. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 26 (1995) ("objective definition of deceptive acts and practices" includes "misrepresentations or omissions"); *see also Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000); *Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49, 52 (N.Y. 1st Dep't 2004).

Omission-based claims are appropriate "where the business alone possesses material

- 29 -

information that is relevant to the consumer and fails to provide this information." *Oswego*, 85 N.Y.2d at 26.  The CAC alleges that Ford concealed and/or failed to disclose the existence of a defect in the Vehicles and the fact that, as a result of the defect, the Vehicles' torque converters and transmission fail prematurely.  (CAC at ¶¶ 137-138, 140.)  The CAC adequately alleges that Ford withheld material information from consumers and, as a result, effectively pleads omission-based deception.  *See Bildstein v. Mastercard Int'l Inc.*, No. 03 Civ.9826I (WHP), 2005 WL 1324972, at *4 (S.D.N.Y. June 6, 2005).

Defendant's additional argument that Plaintiffs' Section 350 claims fail because Plaintiffs failed to allege that they would have behaved differently had the omitted information been disclosed, once again blatantly ignores the allegations of the CAC.  Plaintiffs clearly allege that, had they known of the defect in the Vehicles torque converter, they would not have purchased the Vehicles.  (CAC at ¶ 141.)  Therefore, even if such an allegation is required, as Defendant asserts, Plaintiffs have satisfied the requirement.  *See also Johnson v. Body Solutions of Commack, LLC*, No. HUSC 769-07, 2008 WL 2008969, at *3 (N.Y.Dist.Ct. April 3, 2008) (under NYDTPA, omissions are independently actionable and reliance is not required).

Therefore, Defendant's Motion to Dismiss Ziehr's NYDTPA claim should be denied.

**F.      Plaintiff Regenburger Has Adequately Plead A Cause Of Action Under The Pennsylvania Unfair Trade Practices and Consumer Protection Law**

1.      The Claim Is Not Barred By The Economic Loss Doctrine

The economic loss doctrine does not bar Regenburger's Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. §§ 201-1, *et seq.*, ("UTPCPL") claim. The "duties" which give rise to a UTPCPL claim arise by statute, not by contract.  *O'Keefe v. Mercedes-Benz USA,* 214 F.R.D. 266, 275 (E.D.Pa. 2003).  Allowing the economic loss doctrine to bar Plaintiffs' statutory UTPCPL claim "would eviscerate the purpose of the statute, which the

legislature enacted with full knowledge of the existence of common-law contract remedies."

*Smith v. Reinhart Ford*, 68 Pa D & C 4th 432, 437 (Lancaster, 2004); *see also Oppenheimer v. York International*, No. 4348, 2002 WL 31409949, at *5-6 (Pa. Com. Pl. Oct. 25, 2002).

The case cited by Defendant, *Werwinski v. Ford Motor Co.*, 286 F. 3d 661 (3d Cir. 2002), held that the economic loss doctrine barred a UTPCPL claim. After *Werwinski* was decided, however, Pennsylvania courts either heavily curtailed its application to its specific facts or have flatly refused to follow it with regard to UTPCPL claims. *See, e.g., O'Keefe,* 214 F.R.D. at 275; *Commonwealth v. Manson*, 903 A.2d 69, 74 (Pa. Commw. 2006); *Zwiercan v. GMC*, No. 3235, 2002 WL 31053838, at *7 (Pa. Com. Pl. Sept. 11, 2002); *Hearns v. Parisi*, No. Civ.A. 3:CV-05-323, 2006 WL 839362, at *4, n. 9. (M.D.Pa. Mar. 27, 2006) (Vanaskie); *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 401, n.5 (3rd Cir. 2004) (application of economic loss doctrine to UTPCPL questioned after *Werwinski*).  Importantly, *Werwinski* was handed down before the Pennsylvania Supreme Court decided *Bilt- Rite*, holding the "economic loss" doctrine did not bar plaintiff's negligent misrepresentation claims under Restatement (Second) of Torts § 552 that caused only economic losses.  *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 284-87 (Pa. 2005).  According to Judge Van Antwerpen -- now on the Third Circuit -- in *O'Keefe*:

> We cannot follow the [*Werwinski*] panel's decision when it is not in harmony with Pennsylvania state law because: with (1) in Pennsylvania common law may not overrule legislative intent and violate a statute; (2) Pennsylvania courts have refused to apply the economic loss doctrine in consumer common law intentional fraud suits; (3) Pennsylvania courts have allowed treble damage awards in consumer fraud cases pursuant to the UTPCPL without reference to the economic loss doctrine; (4) Pennsylvania courts since *Werwinski* have continued to do so; and (5) the panel based its decision entirely on a U.S. District Court for the Western District of Wisconsin case applying Wisconsin law which is not binding on Pennsylvania courts.

*O'Keefe*, 214 F.R.D. at 275.

Moreover, a close review of *Werwinski* reveals the Court's decision was based on "appellants' inability to proffer contrary authority." *Werwinski*, 286 F. 3d at 681.  Plaintiffs have supplied this Court with ample authority that the economic loss doctrine cannot bar a UTPCPL claim. *Werwinski* is not controlling and the economic loss doctrine does not trump the statutory cause of action the Pennsylvania General Assembly provided to consumers injured by deceptive practices.

2.      Regensburger Has Pled Justifiable Reliance

To allege justifiable reliance under the UTPCPL, a plaintiff need only allege "'that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the [defendants'] misrepresentation' or deceptive conduct." *Seldon v. Home Loans Servs.*, 647 F. Supp. 2d 451, 470 (E.D.Pa. 2009) (*quoting Hunt v. United States Tobacco Co.*, 538 F. 3d 217, 223 n. 4 (3d Cir. 2008)).  Furthermore, the UTPCPL should be construed liberally.  *See Keller v. Volkswagen of Am., Inc.*, 733 A.2d 642, 646 (Pa. Super. Ct. 1999).  Here, Plaintiffs have alleged that they would not have purchased the Vehicles had Ford not omitted information regarding the Vehicles.  (CAC at ¶ 31.)  That is all that is necessary to establish justifiable reliance under the UTPCPL.

Finally, Pennsylvania courts have found "that 'reliance' is not a required element for a Plaintiff to proceed under a 'deceptive' practice claim." *Zwiercan v. GM Corp.*, No. 3235 2002 WL 31053838 at *2 (Sept. 11, 2002, Pa. Com. Pl.) (holding that a manufacturer has a duty to disclose a known latent defect to a purchaser when the purchaser is unsophisticated and does not have access to the same information as the manufacturer.)  Here, Regensburger is asserting a deceptive practice claim.  For the above reasons, Defendant's Motion to Dismiss Regensburger's UTPCPL claim should be denied

- 32 -

### G.     Defendant's Issuance Of An Express Warranty Does Not Preclude Plaintiffs' Consumer Fraud Claims

Ignoring not only the allegations of the CAC but also applicable law, Defendant argues that Plaintiffs' well-pled consumer protection act claims should be dismissed simply because Defendant issued an express warranty.  Not surprisingly, Defendant is unable to cite one case from any of the relevant jurisdictions in support of its argument, which would essentially eliminate all consumer protections offered by the various consumer protection acts in question. Instead, Defendant purports to rely on case law from other jurisdictions which are not only non-precedential but which, upon examination, offer little support to Defendant's argument under the facts alleged by Plaintiffs.

Completely ignoring the allegations of the CAC, and in a transparent attempt to mislead the Court, Defendant suggests that there are only two possibilities for vehicle manufacturers -- that they disclose *all* of the specific details that it knew *might* occur in the vehicles or that a manufacturer should predict which specific defect *might* occur to a specific purchaser and disclose that defect to that purchaser.  (Brief at 27-28.)  Defendant's straw man argument ignores the allegations of the CAC – the allegations do not deal in guesswork, as Defendant suggests, but rather allege that the Vehicles are sold with a defective torque converter that poses a significant safety risk and ***will inevitably fail*** well in advance of what is reasonably expected by consumers and the components' expected useful life.  (CAC at ¶¶ 2-3, 25.)  Plaintiffs further allege that Defendant was aware of the defect prior to selling the Vehicles to consumers and, despite that knowledge, issued consumers a warranty that did not cover the defective torque converters during the time period that Defendant knew they would fail.  (CAC at ¶¶ 23, 25-27.)  Instead, Defendant concealed its knowledge of the defect from Plaintiffs and consumers.  (CAC at ¶ 26.) Plaintiffs are not suggesting that Defendant speculate about possible defects but rather that the

law requires it to disclose material, safety related, defects of which it is aware.  To say the least,

there is nothing "revolutionary" about curtailing this type of deception.

Not surprisingly, Defendant fails to cite even one case in any of the jurisdictions that are

at issue here.  Plaintiffs have alleged violations of the consumer protection acts of Florida,

Illinois, Maine, Maryland, New York and Pennsylvania.  Each of the relevant states' consumer

protection acts provides for causes of action based upon a failure to disclose information to

consumers, exactly what Plaintiffs have alleged.  *See PNR, Inc. v. Beacon Property*

*Management, Inc.*, 842 So.2d 773, 777 (2003) (An unfair practice under Florida law is "one that

'offends established public policy,' and one that is 'immoral, unethical, oppressive, unscrupulous

or substantially injurious to consumers'" or one where there is a representation, ***omission*** or

practice that is likely to mislead a reasonable consumer.) (emphasis added); *Connick v. Suzuki*

*Motor Co., Ltd.*, 675 N.E.2d 584, 595 (Ill. 1996) (holding that under Illinois law, there was a

violation of the Illinois Consumer Fraud Act where an auto manufacturer failed to disclose the

existence of a defect.); Md. Code Ann., Commercial Law § 13-301 (expressly recognizing

claims based on omissions under Maryland Consumer Protection Act); *State v. Weinschenk*, 868

A.2d 200, 206 (Me. 2005) ("An act or practice is deceptive [under the MUTPA] if it is a material

representation, ***omission***, act or practice that is likely to mislead consumers acting reasonably

under the circumstances" (emphasis added)); *Oswego Laborers' Local 214 Pension Fund v.*

*Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 26 (1995) ("objective definition of deceptive acts

and practices" under New York law includes "misrepresentations or omissions"); *Zwiercan v.*

*GM Corp.*, 2002 WL 31053838, at *2 (Sept. 11, 2002, Pa. Com. Pl.) (holding that under

Pennsylvania law a manufacturer has a duty to disclose a known latent defect to a purchaser

when the purchaser is unsophisticated and does not have access to the same information as the manufacturer).

Although the relevant statutes and case law make it clear that claims such as those brought by Plaintiffs are appropriate under the relevant consumer protection laws, Defendant argues that the Court should ignore the laws of the relevant jurisdictions and instead rely upon decisions based upon other, irrelevant, statutes.  Apart from the obvious deficiency -- the cases it cites have no bearing on the allegations of the CAC, as they are all based upon different statutes and have no precedential or other value – the cases relied upon by Defendant offer no support for its position.

Defendant relies upon two Wisconsin cases, *Ball v. Sony Elecs., Inc.*, No. 05-C-307-S, 2005 WL 2406145 (W.D.Wis. Sept. 28, 2005), and *Neuser v. Carrier Corp.*, No. 06-C-645-S, 2007 WL 484779 (W.D.Wis. Feb. 9, 2007).  Both cases involve alleged violations of Wisconsin Statute § 100.18.  Unlike the consumer protection acts at issue here, § 100.18 requires the making of an affirmative statement and is not violated by a failure to disclose a known defect. *Ball*, 2005 WL 2406145, at *2; *Neuser*, 2007 WL 484779, at *4.  As a result, the Wisconsin cases relied upon by Defendant are of no moment here.

Defendant also relies on a number of California and New Jersey cases for the inapplicable proposition that "mere non-disclosure of a defect, without more" does not constitute a violation of those states' consumer protection acts.  (Brief at 30.)  First, of course, Plaintiffs are not asserting claims under the consumer protection laws of California or New Jersey.  Second, Plaintiffs are not alleging a "mere non-disclosure of a defect, without more."  Plaintiffs are alleging that Defendant sold Vehicles with a defective torque converter that poses a significant safety risk and will inevitably fail well in advance of what is reasonably expected by consumers

and the components' expected useful life.  (CAC at ¶¶ 2-3, 25.)  Plaintiffs further allege that

Defendant was aware of the defect prior to selling the Vehicles to consumers and concealed that

knowledge from consumers.  (CAC at ¶¶ 23, 25-27.)  Although Plaintiffs assert that the

California cases cited by Defendant, requiring a safety hazard to maintain an omission-based

claim, represent an incorrect interpretation of California law,[8] it is apparent that even under that

standard, Plaintiffs claims would be viable.  Here, Plaintiffs have alleged both materiality and the

existence of a safety hazard.  Under either standard, therefore, Plaintiffs' claims would survive,

had they been brought under California law, under the case law relied upon by Defendant.

Similarly, even if New Jersey law were relevant, Defendant's reliance upon *Perkins v.*

*DaimlerChrysler Corp.,* 890 A.2d 997 (N.J.Super. App. Div. 2006) and *Noble v. Porsche Cars*

*N. Am., Inc.*, 694 F.Supp.2d 333 (D.NJ. 2010), is infirm, as those cases represent a fundamental

misunderstanding of New Jersey law and are factually distinguishable from the case presented

here.  The New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-2, makes unlawful the

"knowing concealment, suppression, or ***omission*** of any material fact with intent that others rely

upon such concealment, suppression or omission."  *Id.* (emphasis added).  And, it is well

established that "a duty to disclose is not necessary to have a knowing omission violate the CFA"

[and] "[a]ll that must be proven is that there was a knowing omission of material information

with the intent others rely upon it."  *Harvey v. Nissan North America, Inc.,* No. C 12016-04,

2005 WL 1252341, at *7 (N.J.Super.Ct. April 29, 2005), *citing Mango v. Pierce-Coombs*, 370

---

[8] The correct statement of California law is that a fact must only be "material" in order for its omission to be actionable. *Tietsworth v. Sears*, No. 09-cv-288, __ F.Supp.2d ___, 2010 WL 1268093, at *10 (N.D.Cal. March 31, 2010) ("A plaintiff may 'successfully pursue a CLRA claim [based on a fraudulent omission], *** if [the manufacturer] was 'obliged to disclose' the potential for problems.' * * * To establish that Defendants owed a duty to Plaintiffs based upon exclusive knowledge of the defect, Plaintiffs also must demonstrate that the defect was material. Materiality exists if the omitted information would cause a reasonable consumer to behave differently if he or she were aware of the information.") (citations omitted).

N.J.Super. 239, 254 (App.Div.2004). Two recent cases have rejected the interpretation espoused

by Defendant. In *Maniscalco v. Brother Int'l Corp.*, 627 F.Supp.2d 494 (D.N.J. 2009), the court

distinguished *Perkins* on the basis that the *Perkins* plaintiff did not allege that the allegedly

substandard vehicle ever failed. *Id.* at 501. The court also distinguished *Perkins* on the basis

that the *Perkins* plaintiff did not allege that the defendant knew that the vehicles contained a

defect that would cause it to fail before its expected useful life. *Id.* The *Maniscalco* court held

that in a case, like presented here, where there are allegations that a manufacturer knew that it

had a defective product which would fail before its expected useful life and concealed that defect

from consumers, there is an adequately pled violation of the New Jersey Consumer Fraud Act.

*Id.* at 502; *see also McCalley v. Samsung Elecs. Am. Inc.*, No. 07-2141, 2008 WL 878402

(D.N.J. 2008) (denying a motion to dismiss where plaintiff alleged, *inter alia*, that he purchased

a defective television which defendant knew or should have known had a defect, but the defect

manifested itself outside the express warranty period). Even under New Jersey law, therefore,

Plaintiffs' claims would survive.

Defendant's desperation is resoundingly illustrated by the fact that even its cherry-picked

case law, from jurisdictions with no connection whatsoever to this litigation, fail to support its

position. As discussed above, the relevant jurisdictions unquestionably permit claims under their

respective consumer protection laws based on omissions such as those pled by Plaintiffs. As a

result, Defendant's Motion to Dismiss Plaintiffs' claims should be denied.

## III.   PLAINTIFFS STATE CLAIMS FOR UNJUST ENRICHMENT

### A.   Plaintiffs Abraham, Doll, Pollack And The Ziehrs Are Permitted To Plead Alternative Claims For Unjust Enrichment

With respect to Plaintiffs' claims for unjust enrichment, Defendant fails to appreciate, or

ignores, the fact that these claims are expressly pled in the alternative. (CAC at ¶ 155)

Defendant asks the Court to disregard the unambiguous language of Federal Rule of Civil Procedure 8, which states that a plaintiff's claims for relief "may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3).

Moreover, this Circuit has very recently confirmed that unjust enrichment may be pled in the alternative. *See Hoang v. Georgetown Contractors, Inc.*, No. 8:10-CV-2117-AW, 2010 WL 4485729, at *3 (D.Md. Nov. 9, 2010) ("while the Court recognizes that Plaintiffs will not be able to recover under both theories, Plaintiffs may plead alternatively under a theory of Breach of Contract and Unjust Enrichment."); *Jones v. Koons Automotive, Inc.*, 2010 WL 4449388, at *13, (D.Md. Nov. 5, 2010) ("Although Jones will not ultimately be able to recover both contractual and quasi-contractual remedies, dismissing the unjust enrichment claims now would be premature.") (citations omitted).[9] Here, since the unjust enrichment claims are clearly and explicitly pled in the alternative, there can be no legitimate quarrel with the pleading of such claims at this stage in the proceedings.

In addition, even the Maryland case relied upon by Defendant, *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600 (Md. 2000), recognizes that "when there is evidence of fraud or bad faith, there has been a breach of contract or a mutual rescission of the contract, when rescission is warranted, or when the express contract does not fully address a subject matter," one may plead unjust enrichment in the alternative. *Id.* at 609.

---

[9] The same is true in the other jurisdictions challenged by Defendant. *See Prudential Ins. Co. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623-24 (N.D. Ill. 2008) (because federal pleading standards expressly allow claims to be pleaded in the alternative, even if contradictory, a party may properly allege an unjust enrichment claim as an alternative claim under Illinois law); *Linares v. Richards*, No. 08-CV-3234, 2009 WL 2386083, at *5 (E.D.N.Y. Aug. 3, 2009) (recognizing that courts construing New York law permit pleading unjust enrichment in the alternative) (citing cases); *GMAC Comm. Mortgage Corp. v. Gleichman*, 84 F.Supp.2d 127, 136-137 (D. Me. 1999) (a party is not precluded from pleading unjust enrichment in the alternative because a factfinder may find that no contract exists and may still award damages on a theory of unjust enrichment.) (citation omitted).

Here, as discussed above, Plaintiffs have alleged fraud and bad faith.  Further, Defendant has challenged Plaintiffs' implied warranty claims.  There can be no question, then, that they are entitled to plead unjust enrichment in the alternative.

**B.      Plaintiffs Garcia, Mixon And Regensburger Have Adequately Pled Causes Of Action For Unjust Enrichment**

Plaintiffs do not dispute that, in order to state a claim for unjust enrichment, they must allege that Defendant was enriched, the enrichment was at Plaintiffs' expense, and Defendant's retention of the benefit would be unjust.  *See Swindell v. Crowson*, 712 So.2d 1162, 1163 (Fla.Ct.App. 1998); *Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 167 (S.C. 2003); *Global Ground Support, LLC v. Glazer Enters., Inc.*, 581 F.Supp.2d 669, 675 (E.D. Pa. 2008).  Here, the CAC alleges that Plaintiffs purchased a defective product that was marketed and sold by Defendant and that, as a result of that defect, paid more for the product than they otherwise would have.  In addition, Plaintiffs each incurred repair costs associated with the defect. Because Plaintiffs paid more for the Vehicles then they otherwise would have, the value of other Vehicles sold by Defendant was inflated, regardless of where Plaintiffs purchased the Vehicles, resulting in a benefit to Defendant, at Plaintiffs' expense.  Plaintiffs further allege that they were forced to pay to replace their torque converters as a result of the defect.  The replacement of the torque converters undoubtedly resulted in revenues being paid to Defendant.  Thus, Defendant was further benefited at Plaintiffs' expense.  Therefore, Garcia, Mixon and Regenburger have adequately stated claims for unjust enrichment.

**CONCLUSION**

For the reasons discussed above, Plaintiffs respectfully request that this Court deny Ford's Motion in its entirety.[10]

Dated: December 9, 2010

s/Timothy F. Maloney
Timothy F. Maloney, Bar No. 03381
Steven M. Pavsner, Bar No. 01353
JOSEPH GREENWALD AND LAAKE PA
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Telephone: (301) 220-2200
Facsimile: (301) 220-1214
Email: tmaloney@jgllaw.com
            spavsner@jgllaw.com

James C. Shah
Nathan C. Zipperian
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9880
Email: jshah@sfmslaw.com
            nzipperian@sfmslaw.com

Mark Anderson
ANDERSON, OGILVIE & BREWER
600 California Street, 18th Floor
San Francisco, CA 94108
Telephone: (415) 651-1950
Facsimile: (415) 956-3233
Email: mark@aoblawyers.com

---

[10] It is well settled that leave to amend should be freely granted. *See Island Creek Coal Co. v. Lake Shore, Inc.,* 832 F.2d 274, 279 (4th Cir.1987). As such, if the Court determines that the CAC is, in any manner, deficient, Plaintiffs respectfully submit that they should be permitted leave to amend the CAC to cure any deficiencies that the Court identifies.

Rose F. Luzon
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
401 West A Street, Suite 2350
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (619) 234-7334
Email: rluzon@sfmslaw.com

Richard P. Rouco
WHATLEY DRAKE & KALLAS
1000 Park Place Tower
2001 Park Place North
Birmingham, AL 35203
Telephone: (205) 488-1250
Facsimile (205) 328-9669
Email: rrouco@wdklaw.com

Alan M. Mansfield
CONSUMER LAW GROUP OF
CALIFORNIA
10085 Carroll Canyon Road
San Diego, CA 93269
Telephone: (609) 308-5034
Email: alan@clgca.com

Steven N. Berk
BERK LAW PLLC
1225 15th Street NW
Washington, DC 20005
Telephone: (202) 232-7550
Email: steven@berklawdc.com

Joel M. Rubenstein
Steven J. German
RUBENSTEIN & GERMAN
19 West 44th Street, Suite 1500
New York, NY 10036
Telephone: (212) 704-2020
Email: jrubenstein@germanrubenstein.com
       sgerman@germanrubenstein.com

***Attorneys for Plaintiffs and the Proposed
Classes***