**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| ERIC GREGORY DOLL, *et al.*, On Behalf Of Themselves And All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>            v.<br><br>FORD MOTOR COMPANY,<br><br>    Defendant. | * <br> * <br> * <br> * <br> * <br> *   Civil Action No. 8:10-cv-01505-AW <br> * <br> * <br> * <br> * |

*************************************************************************

**MEMORANDUM OPINION**

Plaintiffs Eric Gregory Doll, Donald L. Abraham, David Garcia, Stephen Mixon, Matthew Pollack, Michael Regensburger, Patrick and Shirley Ziehr (collectively "Plaintiffs"), on behalf of themselves and all other persons and entities similarly situated (the "Class(es)"), bring this class action against Ford Motor Company ("Defendant" or "Ford"). Pending before the Court is Defendant's Motion to Dismiss (Doc. No. 23). The parties have fully briefed the motions, and the Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons articulated herein, the Court will **GRANT**-in-**PART** and **DENY**-in-**PART** Defendant's Motion to Dismiss.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs bring this suit against Defendant for the benefit and protection of all individuals who purchased or leased 2004 and 2005 Ford Freestar and Mercury Monterey vehicles ("vehicles"). (*See* Am. Compl. ¶ 1). The Classes are all persons or entities who purchased or leased the vehicles in the states of Florida, Illinois, Maine, Maryland, New York, Pennsylvania,

or South Carolina. *See id.* ¶ 46. Plaintiffs assert nine separate causes of action: (i) breach of implied warranty under the Magnuson-Moss Act, 15 U.S.C. §§ 2301, 2301(7), 2310, asserted on behalf of the Illinois, Maine, Maryland, New York, Pennsylvania, and South Carolina Classes; (ii) breach of implied warranty asserted on behalf of the Illinois, Maine, Maryland, New York, Pennsylvania, and South Carolina Classes; (iii) violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), FL. STAT. ANN. 501.201, asserted on behalf of Plaintiff Garcia and the Florida Class; (iv) violations of the Illinois Consumer Fraud and Deceptive Practices Act ("CFDPA"), 815 ILSC 505/1, *et seq*., asserted on behalf of Plaintiff Abraham and the Illinois Class; (v) violations of the Maine Unfair Trade Practices Act ("MUTPA"), 5 ME. REV. STAT. ANN. § 205-A, *et seq*., asserted on behalf of Plaintiff Pollack and the Maine Class; (vi) violations of the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN., COMMERCIAL LAW, § 13-101, *et seq*., asserted on behalf of Plaintiff Doll and the Maryland Class; (vii) violations of the New York Deceptive Trade Practices Act ("NYDTPA"), N.Y. GEN. BUS. LAW §349, *et seq*., asserted on behalf of Plaintiff the Ziehrs and the New York Class; (viii) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 PA. CONS. STAT. ANN. §§ 201-1, *et seq*., asserted on behalf of Plaintiff Rogensburger and the Pennsylvania Class; (ix) and unjust enrichment asserted on behalf of all Plaintiffs and Classes. *See id.* ¶ 5, 19, 22, 24, 26, 28, 30, 33-34, 36.

Plaintiffs allege that the Ford vehicles were equipped with defective torque converters that suddenly and without warning prevented the vehicles from accelerating or maintaining their speed. *Id.* ¶ 2. Consequently, Plaintiffs contend that the defect renders the vehicles entirely inoperative or barely maneuverable, thereby posing a safety hazard for drivers and passengers of the vehicles. *Id.* ¶ 19. Moreover, Plaintiffs claim that the defective torque convertors do not

conform to reasonable consumer expectations as these components have a markedly reduced useful life when compared to similar vehicles with similar torque convertors and transmissions. *Id.* ¶ 25. Due to this alleged defect, Plaintiffs were forced to replace the torque converter, transmission, and/or related parts at a cost of approximately $1,000 to $3,000. *Id.*

Plaintiffs further claim that Ford both concealed and failed to disclose essential information concerning the vehicles' defective torque converter. *Id.* ¶ 3. Plaintiffs assert that Ford knew the torque converter was defective and knew that it would fail before the component's expected life. *See id.* ¶ 3-4. Nevertheless, Plaintiffs claim that Ford consciously concealed facts concerning the component's performance history and propensity for premature failure throughout the distribution, marketing, sales, customer service and advertisement of the vehicles. *See id.* Plaintiffs argue that Ford had exclusive knowledge of the defect from access to relevant data, as well as supplemental knowledge from numerous complaints made to Ford by its customers, internet websites, and various other public forums. *See id.* ¶ 26. In particular, Plaintiffs cite an article by *The New York Times*, which reported that the National Highway Traffic Safety Administration ("NHTSA") initiated a preliminary investigation of the vehicles to evaluate complaints of transmission failure. *Id.* ¶ 20. When this investigation began, NHTSA had received 178 complaints of this defect. *Id.* On November 10, 2009, NHTSA moved to the Engineering Analysis phase of its investigation. *Id.* This phase represents the second and final step of an NHTSA investigation and is triggered when data from the first phase indicates that further investigation of a potential safety defect is required. *Id.* By this time, NHTSA had received 227 complaints involving loss of power, 124 of which were attributed to "torque converter shaft splines stripping, causing a sudden loss of power to the drivetrain." *Id.*

Moreover, Plaintiffs assert that before NHTSA's July 2009 preliminary investigation, Ford was aware of customer complaints regarding the torque convertor and resulting transmission failure. *Id.* ¶ 21. By 2006, Plaintiffs assert that thousands of owners had complained directly to Ford or through Ford's authorized dealers, as well as through such internet sites as http://www.edmunds.com. *Id.* ¶ 21-22.

As a direct consequence of Ford's conduct, Plaintiffs claim to have suffered injuries, damages and/or ascertainable loss. *Id.* ¶ 28. Plaintiffs assert that they would have paid less for the vehicles or not have purchased the vehicles if Ford had disclosed the material information regarding the defective torque convertor and resulting transmission failure. *See id.* ¶¶ 29, 31. Additionally, Plaintiffs claim to have paid unreasonably high sums of money to repair and replace the vehicles' torque converter, transmission and related parts. *Id.* ¶ 29. Finally, Plaintiffs allege injury because the defective torque convertor effectively prohibited the Plaintiffs' safe enjoyment of the vehicles. *Id.* ¶ 30.

In response to the Plaintiffs' Amended Complaint, Defendant moves to dismiss each cause of action pursuant to Fed. R. Civ. P. 12(b)(6). In support of their motion to dismiss, Defendant claims that the implied warranty claims of Plaintiffs Abraham, Doll, Pollack, Regensburger, and the Ziehrs are barred by the statute of limitations. (*See* Doc. No. 23-1, at 6-9). Alternatively, the Defendant asserts that the implied warranty claims of Plaintiffs Abraham and the Ziehrs should be dismissed because they lack privity with Ford, and the implied warranty claims of Plaintiffs Abraham, Doll, Mixon, and Regensburger should be dismissed because they failed to give the required notice. *Id.* at 11-13. Additionally, Defendant argues that the implied warranty claims of all Plaintiffs should be dismissed because they have not adequately alleged that their vehicles are unmerchantable. *Id.* at 15-19. Finally, Defendant alleges that Plaintiffs'

Magnuson-Moss implied warranty claims fail for the same reasons as their state law claims fail. *Id.* at 19-20.

With respect to the Plaintiffs' consumer fraud claims, Defendant claims that the Plaintiffs have failed to allege a misrepresentation claim with the particularity required by Rule 9(b). *Id.* at 20. Specifically, the Defendant argues that the Court should dismiss each Plaintiff's consumer fraud claim because: Mr. Garcia's claim under the Florida Unfair Trade Practices Act does not allege causation with particularity; Mr. Doll's claim under the Maryland Consumer Protection Act does not allege that Ford knew the relevant facts at the time of sale; Mr. Pollack's claim under the Maine Unfair Trade Practices Act (MUTPA) should be dismissed to the extent that the MUTPA is based on providing warranties to consumers who buy new vehicles from dealerships; the Ziehrs' New York Consumer Fraud claims should be dismissed because the Plaintiff has not showed their reliance on an omission; and, Mr. Regensburger's Pennsylvania consumer fraud claim is barred by the economic loss doctrine and a failure to allege reliance. *See id.* at 20-32. Finally, Defendant argues that all of the consumer fraud claims should be dismissed because Ford disclosed the potential for defects, and any other disclosure would have been either useless or affirmatively misleading. *See id.*

In response to the Plaintiffs' unjust enrichment claims, the Defendant asserts that the claims of Plaintiffs Abraham, Doll, Pollack, and the Ziehrs should be dismissed because the subject matter of the claim is covered by an express contract between the parties. *Id.* at 32-34. Additionally, the claims of Plaintiffs Garcia, Mixon, and Regensburger should be dismissed because they did not plausibly allege that they provided a benefit to Ford when they purchased their used vehicles. *Id.* at 34-35.

## II.      STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Generally, a complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, the Supreme Court has directed courts that "Rule 8 still requires a 'showing,'" of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). In its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In sum, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).

III.    **ANALYSIS**

    a. **Plaintiffs' Implied Warranty Claims**

        i. **Statute of Limitations**

Defendant avers that Plaintiffs Abraham, Doll, Pollack, Regensburger, and the Ziehrs are barred from claiming breach of implied warranty by the applicable statutes of limitations. (*See* Doc. No. 23-1, at 6-9). In their response, Plaintiffs do not deny that their claims are barred, but rather, they assert that the statute of limitations should be tolled. (*See* Doc. No. 32, at 7). This Court finds that the plaintiffs have adequately alleged that the applicable statutes of limitations was tolled when Ford fraudulently concealed the torque converter defect, and thus these plaintiffs' implied warranty claims are not time barred and should not be dismissed at this point.

Under Maryland law, the statute of limitations governing warranty claims is tolled if "a cause of action is kept from a party by the fraud of an adverse party." MD. CODE ANN., CTS. & JUD. PROC. § 5-203. Under Rule 9(b) of the Federal Rules of Civil Procedure, the party alleging fraudulent concealment for the purpose of tolling the statute of limitations must plead the circumstances with particularity. *See Kwintkiewicz v. Bentley Motors, Inc*., No. WMN–10–3212, 2011 WL 1336576 (D. Md. Apr. 7, 2011). Specifically, Rule 9(b) requires the party alleging fraud to "state with particularity the circumstances constituting fraud or mistake," yet "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). The essential elements of fraudulent concealment include: (1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment. *Lloyd v. General Motors Corp*., 916 A.2d 257, 274 (Md. 2007). As a

result, the party alleging fraudulent concealment must plead with particularity each of these five elements.

Defendant argues that because there is no confidential or fiduciary relationship between these Plaintiffs and Ford, a duty to disclose does not exist, and thus there is no fraudulent concealment to toll the statute of limitations. (*See* Doc. No. 23-1, at 11).  A duty to disclose can certainly arise when a fiduciary or confidential relationship exists between the parties or when one party makes a partial and fragmentary statement of fact. *See Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 820 (D. Md. 2005).  Nevertheless, a duty to disclose can also arise under a federal statute.  *Langford v. Rite Aid of Alabama, Inc.* 231 F.3d 1308, 1313 ("In exploring the question of whether a duty to disclose exists in a particular situation, federal courts must go beyond common law and conduct an inquiry into relevant federal sources of authority.")   In this case, the unambiguous language of the Motor Vehicle Safety Act, 49 U.S.C. § 30101-30170 ("Safety Act"), places a duty on vehicle manufacturers to report vehicle or equipment defects. (*See* 49 U.S.C. § 30118(c)). In particular, the Safety Act states that a manufacturer of a motor vehicle has a duty to notify the NHTSA and vehicle owners when it "learns [that] the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety." *Id.* Motor vehicle safety is defined as the "performance of a motor vehicle or motor vehicle equipment in a way that protects the public against unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle, and against unreasonable risk of death or injury in an accident . . . ." *Id.* § 30102(8).

Taking the factual allegations in Plaintiffs' Amended Complaint as true, Plaintiffs have alleged sufficient facts to demonstrate that Ford was under a duty pursuant to the Safety Act to disclose the torque converter defects. Plaintiffs state that through customer complaints filed

directly with Ford, Ford's authorized dealerships, NHTSA, internet websites, and other public venues, Ford had knowledge of the defects but did not disclose them to the Plaintiffs or the Classes. (*See* Doc. No. 20, at ¶¶ 4, 21, 23, 27). Moreover, Plaintiffs allege that the sudden loss of power to the vehicle poses a safety hazard for drivers and passengers of the vehicles, as well as for other vehicles traveling on public highways and streets. *See id.* ¶ 19.  Therefore, Plaintiffs have pled sufficient facts to show that the defective torque converter presents a risk of accidents, deaths and/or injuries, which directly relates to motor vehicle safety as defined by the Safety Act. Finally, all reasonable inferences can be made that Ford not only knew of the defect, but also that Ford actively concealed its internal determination that the defect relates to motor vehicle safety.[1] Consequently, Plaintiffs have adequately pled facts to show that Ford owed a duty to the Plaintiffs.

While not directly challenged by Defendant, the remaining four elements of fraudulent concealment have been sufficiently pled by the Plaintiffs, thereby tolling the statute of limitations. First, Plaintiffs adequately argue that had Ford disclosed the vehicles' defect, the Plaintiffs would have acted differently. (*See* Am. Compl. ¶ 31). Second, Plaintiffs have alleged a set of facts that support the notion that Ford actively intended to conceal facts regarding this defect. *See id.* ¶ 4. Specifically, Plaintiffs claim that Ford had exclusive knowledge of the defect from both internal and external sources but purposely concealed this information from the Plaintiffs and Class members. *See id.* ¶¶ 4, 26. Finally, Plaintiffs allege sufficient facts that they justifiably relied on Ford's concealment and therefore suffered damages. *See id.* ¶¶ 28-31.

---

[1] Defendant argues that Plaintiffs have not adequately alleged that Ford determined that the defect relates to motor vehicle safety as required under the Safety Act. (*See* Doc. No. 37, at 4). Nevertheless, Plaintiffs are arguing that the statue of limitations should be tolled because Ford fraudulently concealed a defect within the Vehicles' torque convertor. (*See* Doc. No. 32, at 8). Inherent within this argument is that Ford concealed all facts surrounding the defect, including Ford's internal determination of whether the defect related to motor vehicle safety. In light of this fact, this Court believes that all reasonable inferences can be drawn to conclude that Ford concealed its determination that the defect related to motor vehicle safety.

As an alternative reason to dismiss Plaintiffs' tolling allegations, Defendant argues that Plaintiffs have not pled fraudulent concealment with the sufficient particularity required under Rule 9(b). (*See* Doc. No. 23-1, at 10). Defendant contends that nowhere in the Amended Complaint have the Plaintiffs identified any misrepresentations, conversations or facts showing active concealment by Ford that would satisfy the pleading requirements for fraud. *See id.* at 10. Nonetheless, in fraudulent concealment cases where the concealment involves omissions of material fact, Rule 9(b)'s particularity requirements are relaxed. *See Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997); *see also Hill*, 383 F. Supp. 2d at 822-23 (distinguishing between cases of fraudulent concealment based on omissions where a relaxed Rule 9(b) standard is used, and cases where fraud is predicated on a partial statement of fact which presumably can be stated with particularity by Plaintiff, thereby evoking the normal 9(b) standard). The rationale supporting this conclusion is that omissions cannot be described in terms of the time, place, and contents of the misrepresentation as required by other types of fraudulent concealment. *See id.*

Under this lower standard, Plaintiffs have alleged with sufficient particularity the circumstances constituting fraudulent concealment. Specifically, Plaintiffs declare that Defendant was aware of a defect in the torque convertor, and that it learned of the problem as early as 2004. (*See* Am. Compl. ¶ 21). Additionally, Plaintiffs allege that Ford became aware of the defect through the NHTSA's investigation, customer complaints, and through such websites as http://www.edmunds.com. *See id.* ¶¶ 20, 21, 26. Plaintiffs assert that Ford consciously concealed this information from the Plaintiffs and the Classes throughout the design, manufacture and advertisement of the vehicles. *See id.* ¶¶ 4, 27. Finally, Plaintiffs claim they would have taken different actions had they known about the defective torque convertor. *See id.*

¶¶ 25, 29, 31. These allegations state with the required particularity when and how the Defendant became aware of the defect, and describe the information consciously concealed by Ford. The Plaintiffs have pled particular facts that support the circumstances surrounding their fraudulent concealment allegation. Consequently, the statue of limitations is tolled, and Defendant's motion to dismiss the implied warranty claims of Plaintiffs Abraham, Doll, Pollack, Regensburger, and the Ziehrs' based on the fact that these claims are time-barred is **DENIED**.

### ii.  Privity

As an additional basis for asserting that the plaintiffs' implied warranty claims should be denied, Defendant avers that the implied warranty claims of Plaintiffs Abraham and the Ziehrs should be dismissed because they lack privity with Ford. (Doc. No. 23-1, at 11-13). Plaintiffs counter by arguing that under both Illinois and New York case law, privity requirements are satisfied when the vehicle is purchased through an agent of the manufacturer, e.g., an authorized Ford dealer. (*See* Doc. No. 32, at 12-13). Each plaintiff will be analyzed in turn.

### 1.  Illinois

This Court holds that Plaintiff Abraham was not in privity with Ford, and thus this Plaintiff's breach of implied warranty claim should be dismissed. Under section 2-314(c)(2) of the Uniform Commercial Code, a seller breaches the implied warranty of merchantability if its product is not fit for the ordinary purposes for which such goods are used. *See* 810 ILL. COMP. STAT. ANN. 5/2-314(2)(c) (West 2004). Under Illinois law, privity of contract is a prerequisite to recover economic damages for a breach of implied warranty. *See Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029-30 (Ill. 1988). Specifically, the implied warranties under UCC article II allow a vehicle purchaser to initiate a cause of action solely against the immediate seller—not the manufacturer. *See id.* at 1029. Consequently, since Abraham purchased a used

2005 Ford Freestar from a Ford dealership and not directly from Ford, privity of contract does not exist between Abraham and Ford. (*See* Am. Compl. ¶ 6). Plaintiffs do not deny this contention. Rather, they argue that Abraham was in privity with Ford because the Illinois dealer from which he purchased his vehicle was an agent of Ford. (*See* Doc. No. 32, at 14). The test for agency is whether the principle is capable of controlling the agent's method of accomplishing a task, as well as the agent's ability to subject the principle to liability. *See Williams v. Ford Motor Co.*, 990 F. Supp. 551, 554 (N.D. Ill. 1997) (citing *Wargel v. First Nat'l Bank*, 460 N.E.2d 331 (Ill. App. Ct. 1984)). Furthermore, agency may exist through actual or apparent authority. *Id.* Apparent agency exists if: (1) the principal consented to or knowingly acquiesced to the agent's exercise of authority, (2) the third person reasonably concluded that the party was an agent of the principal, and (3) the third person justifiably relied on the agent's apparent authority to his or her detriment. *Id.* Determining whether an agency relationship has been established is a question of fact that should not usually be decided at the pleading stage; however, it is insufficient to merely provide a general statement that the agency relationship exists. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 592 (Ill. 1996) ("A complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship. It is insufficient to merely plead the legal conclusion of agency.").

In the Amended Complaint, Plaintiffs have not pled any facts to show that an agency relationship existed between Ford and the dealer. Plaintiffs merely state that the Illinois dealership from which Abraham bought his car is an authorized Ford dealership. (Am. Compl. ¶ 6). This sole fact fails to demonstrate the existence of an agency relationship. Moreover, the case relied on by the Plaintiffs to support their notion that an agency relationship existed fails to persuade the Court. *See Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009 (N.D. Ill.

12

2008). Unlike in the present case, the plaintiffs in *Semitekol* cited several facts that were relevant in demonstrating an agency relationship.[2] *See id.* at 1025. In fact, the court in *Semitekol* distinguished its holding from other court decisions that rejected agency arguments based on the plaintiff's ability to allege several factors in support of this connection. *See id.* In stark contrast to *Semitekol*, the Plaintiffs have failed to allege any facts which could support an agency relationship. Consequently, Plaintiff Abraham was not in privity with Ford, and Defendant's motion to dismiss the implied warranty claims of this Plaintiff is **GRANTED**.

## 2.  New York

This Court holds that the Ziehrs Plaintiffs (representing the New York Class) should not be dismissed because the privity requirement under the New York Uniform Commercial Code ("NY UCC") is eliminated in situations where the product's defect is dangerous. Section 2-314 of the NY UCC states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind . . . ." N.Y. U.C.C. LAW § 2-314. In order to be merchantable, products must be fit for the ordinary purposes for which the products are expected to be used. *See id.* Moreover, section 2-318 provides that a seller's warranty, whether express or implied, extends to any person if it is reasonable to expect that the person will use the goods. *Id.* § 2-318. Consequently, a purchaser of a vehicle may assert a breach of implied warranty claim against a seller if the car is not fit for its ordinary purposes. *See Castro v. QVC Network, Inc.*, 139 F.3d 114, 118 n.7 (2d Cir.1998).

---

[2] Specifically, the plaintiffs in *Semitekol* alleged that BMS was (and was held out to be) Monaco's "authorized Beaver Monterey dealership", that Monaco advertises BMS on its website in its "Dealer Finder" function, that BMS distributed Monaco's warranties and owners' manuals to the public, that Monaco advised the plaintiffs that they could contact BMS with any problems or customer service concerns, that BMS was to install certain items requested by the plaintiffs on the motor-home, and that the plaintiffs were given the option of picking up the motor-home at either the dealership or Monaco's factory. *Semitekol*, 582 F. Supp. 2d at 1025.

In regard to asserting a claim against a manufacturer, New York has consistently held that absent privity of contract, a purchaser cannot recover for mere economic loss under a theory of breach of implied warranty. *Westchester Cnty. v. Gen. Motors Corp.*, 555 F. Supp. 290, 294 (S.D.N.Y. 1983); *see also Rosen v. Hyundai Group*, 829 F. Supp. 41, 49-50 (E.D.N.Y. 1993) (recognizing that only sellers are liable for breach of warranty under the NY UCC). Nevertheless, New York recognizes an exception to this rule when the product's defect is a "thing of danger." *Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996); *see also Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 190-91 (S.D.N.Y. 2009). In particular, where a defect in a product makes its use a likely source of danger to several or many people, the manufacturer, as well as the vendor, is liable for breach of implied warranties. *See Hubbard*, 1996 WL 274018, at *5.

In this instance, Plaintiffs have pled sufficient facts to support a finding that the vehicles are dangerous, thereby triggering the privity of contract exception. Plaintiffs assert that the vehicles suddenly, without warning, lose the ability to maintain speed or accelerate. (*See* Am. Compl. ¶ 19). Plaintiffs further claim that the torque convertor defect poses a significant safety hazard for drivers and passengers of the vehicles, as well as other travelers on the highway. *See id.* ¶¶ 2-3. Finally, Plaintiffs provide a detailed description of the NHTSA's investigation regarding a potential safety defect within these vehicles. *See id.* ¶¶ 19-20. Taken together, Plaintiffs have demonstrated that the defective torque converter within the vehicles is a "thing of danger."

Defendant responds by arguing that it is erroneous to rely on the *Hubbard* decision because it was based on *Goldberg v. Kollsman Instrument Corp.*, 191 N.E.2d 81 (N.Y. 1963), which involved a personal injury and not economic loss. (*See* Doc. No. 23-1, at 12). This same

14

argument was raised by the defendant in *Hubbard* but was rejected by that court. The court

stated:

> [t]here is no reason to find that the Goldberg holding is limited to such a
> circumstance [as personal injury cases]. Although the plaintiff in Goldberg was
> the administratrix of the estate of a passenger killed in an airplane crash, the Court
> of Appeals stated that it was answering the broad question: does a manufacturer's
> implied warranty of fitness of his product for its contemplated use run in favor of
> all its intended users, despite lack of privity of contract?

*Hubbard*, 1996 WL 274018, at *7 n.6 (internal quotations omitted). Consequently, this court sees

no reason to limit the holding of *Hubbard* to cases involving personal injury. Finally, Defendant

urges the Court to disregard *Hubbard* and its line of cases because New York state courts have

not followed this *Hubbard* exception. (Doc. No. 37, at 9). Nevertheless, this Court finds the

district court's reasoning to be persuasive and notes that the *Hubbard* line of decisions has not

been overruled by any New York state case. Consequently, for the above reasons, this Court

holds that Plaintiffs the Ziehrs have triggered the "thing of danger" exception to the privity of

contract requirement, and thus Defendant's motion to dismiss the implied warranty claims of this

Plaintiff is **DENIED**.

### iii.  Required Notice

Defendant argues that the Court should dismiss the breach of implied warranty claims of

Plaintiffs Doll, Mixon, and Regensburger because they did not provide notice to Ford or to their

immediate sellers of the vehicles prior to bringing this lawsuit. (*See* Doc. No. 23-1, at 13-15).[3]

Plaintiffs contend that they have adequately pled this requirement by stating in their Amended

Complaint: "Plaintiffs and the Class members have provided sufficient and timely notice to Ford

---

[3] Defendant includes Plaintiff Abraham in this defense; however, the Court will not address this Plaintiff as
Abraham's breach of implied warranty claim has already been dismissed.

regarding the problems they experienced." (Doc. No. 32, at 16). Each Plaintiff will be analyzed in turn.

### 1. Maryland

The Uniform Commercial Code adopted in Maryland requires a buyer to give notice to the seller for a breach of implied warranty. MD. CODE ANN., COM. LAW § 2-607(3)(a). Furthermore, a notification to a seller within a reasonable time is a "prerequisite" for claiming a breach of implied warranty. *See Lynx, Inc. v. Ordnance Prods.*, 327 A.2d 502, 513 (Md. 1974). In particular, the comment to section 2-607 states that the notification must sufficiently demonstrate to the seller that the transaction has issues and must be watched. *See* § 2-607, cmt. 4. The Maryland Court of Appeals has interpreted this provision to require the buyer to inform the seller of the breach, the particular goods that have been impaired, and set forth the nature of the nonconformity. *See Lynx, Inc.*, 327 A.2d at 513. In sum, if a plaintiff wishes to claim a breach of implied warranty against a manufacturer, the plaintiff must notify their immediate seller of the breach. *See Lloyd v. General Motors Corp.*, 575 F. Supp. 2d 714 (D. Md. 2008).

In this instance, Plaintiff Doll has failed to inform the seller of the torque convertor problem, and thus Doll's implied warranty claim must be dismissed. Plaintiffs contend that Doll satisfied the notification requirement by having his car towed to the dealership for repairs and paying for the repair of the torque converter. (*See* Am. Compl. ¶ 33). Nevertheless, this completely fails to meet the notice requirements as articulated by the Maryland Court of Appeals. The Plaintiffs have failed to allege that Plaintiff Doll informed the seller that there was a breach, let alone the particular component that was impaired and the nature of the nonconformity. Absent such information, neither the dealership nor Ford would have known that the Plaintiff was claiming a breach of implied warranty, and the entire purpose of the notice

requirement would be lost.[4] Consequently, the Defendant's motion to dismiss Plaintiff Doll's breach of implied warranty claim is **GRANTED.**

## 2. South Carolina

Plaintiff Mixon's breach of implied warranty claim is dismissed for the same reason as Plaintiff Doll. Under the Uniform Commercial Code adopted by South Carolina, a buyer must notify their immediate seller of breach or be barred from any remedy. *See* S.C. CODE ANN. § 36-2-607(3)(a). In *Southeastern Steel Co. v. W.A. Hunt Const. Co.*, 390 S.E.2d 475 (S.C. Ct. App. 1990), the court identified two prevailing standards that are used by courts to determine what constitutes adequate notice—a lenient or strict standard. *See id.* at 477-78. The court, in holding that the plaintiff had failed to provide adequate notice, did not choose a specific standard to follow. Instead, the court in *Southeastern Steel* based its ruling on the fact that the plaintiff had failed to meet the required notice under the lenient standard. *See id.* at 479. Likewise, when applying the lenient standard, this Court finds that Plaintiff Mixon has failed to provide adequate notice to the immediate seller of its vehicle.

Cases applying the lenient standard typically rely on Comment 4 of section 2-607, which states that the buyer merely needs to inform the seller that "the transaction is still troublesome and must be watched." *See id.* cmt. 4. In this case, Plaintiffs have not pled any facts to show that Mixon provided notice to the Chevy dealership from which he purchased his vehicle. (*See* Doc. No. 32, at 19-20). Rather, Plaintiffs point to paragraph 64 of the Amended Complaint as evidence of the required notice. *See id.* Nevertheless, this paragraph merely concludes that all Plaintiffs gave sufficient and timely notice to Ford. *Id.* This paragraph fails to provide any facts

---

[4] One of the primary reasons for the notification requirement is that it provides the seller and the manufacturer an opportunity to correct their original performance and avoid costly litigation. *See Lynx, Inc. v. Ordnance Prods.*, 327 A.2d 502, 513 (Md. 1974).

that would suggest that the Plaintiffs had informed their immediate sellers of the defective torque

convertor. (*See* Am. Compl. ¶ 64). Therefore, even under the lenient standard, Mixon did not

provide adequate notice. Consequently, Defendant's motion to dismiss the implied warranty

claims of this Plaintiff is **GRANTED**.

### 3. Pennsylvania

Similar to Maryland and South Carolina, the Uniform Commercial Code adopted by

Pennsylvania requires the buyer to provide notice of the breach to the seller or be barred from

any remedy. *See* 13 PA. STAT. ANN. § 2607(c)(1). The Plaintiff Regensburger (representing the

Pennsylvania Class) relies on a New Jersey district court's interpretation of Pennsylvania law to

argue that the filing of a complaint is sufficient notice. (*See* Doc. No. 32, at 20). Nevertheless,

this Court finds that Plaintiff Regensburger's breach of implied warranty claim should be

dismissed.

In *In re Ford Motor Co. E-350 Van Prods. Liability Litigation*, 2010 WL 2813788

(D.N.J. July 9, 2010), the court held that the filing and service of a complaint constitutes

sufficient notice under section 2-607. *See id.* at *39-40. As a result, Plaintiffs argue that

Regensburger gave sufficient notice under Pennsylvania law by filing the original Complaint in

this suit. Defendant counters by pointing to a Pennsylvania district court case that discredits this

idea. In *AFSCME v. Ortho-McNeil-Jassen Pharms., Inc.*, 2010 WL 891150 (E.D. Pa. Mar. 11,

2010), the court stated that plaintiffs need, at a minimum, to allege that they notified the

defendants in some manner or be barred from recovery. *See id.* at 7. Additionally, the court held

that notification requires an affirmative act. *See id.* at 6. This court finds that the holding in

*AFSCME* is more consistent with the purpose of the notice requirement, which include: (1) to

enable the seller to make efforts to cure the breach in order to minimize the buyer's damages and

the seller's liability; (2) to afford the seller a reasonable opportunity to learn the facts so that the seller may adequately prepare for negotiation; and (3) to provide a seller with a terminal point in time for liability. *See Horne v. Novartis Pharms. Corp.*, 541 F. Supp. 2d 768, 786 (W.D.N.C. 2008).   Therefore, this Court holds that the filing of a complaint is insufficient notification. *See AFSCME*, 2010 WL 891150, at *39-40; *see also Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 682 (E.D. Pa. 2011) ("The Court agrees with Defendant that the filing of the Complaint is insufficient 'notification' under the UCC.").

Here, Plaintiff Regensburger has failed to satisfy the notification requirement for claiming a breach of implied warranty. In pleading notification, Plaintiffs cannot merely rely on a statement that they provided notice; rather, Plaintiffs must allege facts that show the particular plaintiff has taken affirmative steps to put the seller on notice. *See Martin*, 765 F. Supp. 2d at 683 ("In making these allegations, Plaintiff has done more than allege Defendant had 'notice' of the defect. Plaintiff is alleging that class members took the affirmative step of 'notifying' Defendant of the breach by complaining about this very issue to Defendant. . . . Consequently, Plaintiff has satisfied the 'notification' requirement . . . .").  As a result, Defendant's motion to dismiss Plaintiff Regensburger claim of breach of implied warranty is **GRANTED**.

### iv.  Unmerchantable Vehicles

Defendant avers that the implied warranty claims of all Plaintiffs should be dismissed because the vehicles are merchantable. (*See* Doc. No. 23-1, at 15-16).[5] Defendant argues that the mere fact a defect manifests itself after the warranty expires does not breach the implied warranty of merchantability. *See id.* In fact, the Defendant warns that the potential for

---

[5] Plaintiffs Abraham, Doll, Mixon, Pollack, Regensburger, and the Ziehrs, representing the Illinois, Maine, Maryland, New York, Pennsylvania, and South Carolina classes, brought breach of implied warranty claims against the Defendant. (Am. Compl. ¶ 55). Nevertheless, this Court has dismissed Plaintiffs Mixon, Doll, Regensburger, and Abraham's implied warranty claims. Consequently, the Court will only analyze Plaintiffs Pollack and the Ziehrs' claims for merchantability.

mechanical failure exists in all complex products and such failure should not mark the product as unmerchantable, or else, every manufacturer would automatically breach the implied warranty by selling their vehicles. *See id.* Nevertheless, this Court finds that Plaintiffs Pollack and the Ziehrs have pled sufficient facts to demonstrate the unmerchantable quality of their vehicles.

Under both Maine and New York law, goods are merchantable if they "are fit for the ordinary purposes for which such goods are used." *See* N.Y. U.C.C. LAW § 2-314; S.C. CODE ANN. § 36-2-314. To determine the ordinary purpose, courts look to the customary expectations and use of the particular good. *See Canning v. Broan-Nutone*, 480 F. Supp. 2d 392, 412 (D. Me. 2007); *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 540-41 (E.D.N.Y. 2006). Since cars are designed to provide transportation, their ordinary purposes are to transport the purchaser along any highway in a safe manner. *See Diaz*, 424 F. Supp. 2d at 541; *see also Canning*, 480 F. Supp. 2d at 412 ("The next step in the analysis is whether the [product] was unfit for that purpose. Specifically, Plaintiffs must show that the [the product] 'because of defects either did not work properly or [was] unexpectedly harmful.'"); *Carlson v. General Motors Corp.*, 883 F. 2d 287, 297 (4th Cir. 1989) ("Since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects. Thus, where a car can provide safe, reliable transportation, it is generally considered merchantable.").

In this instance, the Amended Complaint contains numerous allegations that, accepted as true, state an implied warranty of merchantability claim. In particular, Plaintiffs have alleged that "the defective torque converter and transmission have a useful life less than that of a conventional torque converter and transmission." (*See* Am. Compl. ¶ 25). Due to the defective torque converter and transmission, the vehicles suddenly lose the ability to accelerate or maintain

speed, causing them to be unsafe and unreliable for transportation purposes. *See id.* ¶¶ 19, 25. Furthermore, Plaintiffs cite to a NHTSA investigation that was initiated due to "a potential safety defect" of the vehicles' transmission. *See id.* ¶ 20. Plaintiffs also allege that "the vehicles' torque converter and transmission are unreliable and do not perform in accordance with the reasonable expectations of Plaintiffs and Class members." *See id.* ¶ 25. Finally, Plaintiffs assert that they "would not have purchased, or would have paid substantially less for, their [v]ehicles had they been informed that the torque converter is defective and has (along with the transmission) a markedly reduced useful life." *Id.* The Court finds that the Plaintiffs have alleged sufficient facts to demonstrate that the defective torque converter and resulting transmission failure hinder the Plaintiffs ability to enjoy safe and reliable transportation, thereby making the vehicles unmerchantable. *See e.g.*, *Cholakyan v. Mercedes-Benz USA*, 2011 WL 2682975, at *20 (C.D. Ca. June 30, 2011) ("Vehicles subject to engine failure cannot be said to be merchantable.").

Defendant counters by arguing that consumers' reasonable expectations should not be extended to include components within a vehicle that has traveled over 98,000 miles. (*See* Doc. No. 37, at 12). Nevertheless, the benefit of discovery can illuminate the issue of whether a conventional torque converter and 4-speed transmission that come equipped in comparable vehicles routinely fail after being driven approximately 98,000 miles. Consequently, Defendant's motion to dismiss Plaintiffs Pollack and the Ziehrs' claims of breach of implied warranty is **DENIED**, as they as adequately pled that the vehicles they purchased were unmerchantable.

### b.  Magnuson-Moss Implied Warranty Claims

The Magnuson-Moss Warranty Act ("Act"), 15 U.S.C. § 2301, *et seq.*, provides a method for consumers to sue a warrantor for violations of a written or implied warranty. See *Schimmer v. Jaguar Cars, Inc*., 384 F.3d 402, 405 (7th Cir. 2004). While the Act proscribes minimum federal

requirements for "full" warranties, *see* 15 U.S.C. § 2304(e), it generally "calls for the application of state written and implied warranty law, not the creation of additional federal law." *See Monticello v. Winnebago Industries, Inc.*, 369 F. Supp. 2d 1350, 1356 (N.D. Ga. 2005). The Magnuson-Moss Warranty Act supplements, rather than supplants state law. *See id.* Consequently, the Court adopts the same analysis for the Plaintiffs' breach of implied warranty claims under the Magnuson-Moss Warranty Act as it employed in the previous section of this Memorandum Opinion analyzing Plaintiffs' implied warranty claims. Accordingly, Defendant's Motion to Dismiss is **GRANTED** as to Plaintiffs Abraham, Doll, Mixon, and Regensburger on their Breach of Implied Warranty claims under the Magnuson-Moss Warranty Act, but **DENIED** as to Plaintiffs Pollack and Ziehrs.

### c. Consumer Protection Claims

Plaintiffs Abraham, Doll, Garcia, Pollack, Regensburger, and the Ziehrs bring statutory consumer protection claims under the laws of Illinois, Maryland, Florida, Maine, Pennsylvania, and New York. Defendant offers various reasons why all of the Plaintiffs' consumer protection claims should be dismissed. (Doc. No. 23-1, at 20-31).

First, Defendant avers that all of the Plaintiffs' claims should be dismissed because Plaintiffs have failed to allege any misrepresentation by Ford with the required particularity required by Rule 9(b). *See id.* at 20. Plaintiffs counter by stating that their claims are based upon omissions—not misrepresentations.  Therefore, they need not plead these omissions with particularity. (*See* Doc. No. 32, at 23). The Court finds that Plaintiffs have pled their consumer protection claims with the required specificity, especially under the lower standard employed by courts for claims based on omission. *See Hill*, 383 F. Supp. 2d at 822-23. Plaintiffs allege that Ford concealed, suppressed, and omitted material facts regarding the inherent defect within the

torque converter system. (*See* Am. Compl. ¶¶ 93, 99, 110, 113, 128, 138, 150). Plaintiffs further

allege that Ford knew the vehicles were defective and intended for the Plaintiffs to rely on its

concealment of these material facts, thereby misleading its customers. *See id.* Finally, Plaintiffs

claim that they would have paid significantly less or not have bought the vehicles had they been

aware of these omissions. *See id.* In short, Plaintiffs have pled facts that, if true, would violate

the individual states' consumer protection acts.[6]

　　Next, Defendant contends that the consumer protection claims of all Plaintiffs should be

dismissed because Ford disclosed the potential for defects in its express warranty. (*See* Doc. No.

23-1, at 27). Defendant seeks dismissal by arguing that a warranty is an express

acknowledgement of potential defects in the vehicles. Consequently, Ford did not mislead their

customers since it already disclosed this information. *See id.*  In the Defendant's view, permitting

consumer protection claims in situations where the product outperforms the warranty period

would require car manufacturers to disclose all defects that might occur during the vehicles'

lifetime. *See id.* at 27-28. Indeed, many courts have been wary of consumer protection claims in

similar situations. Courts warn that allowing consumer protection claims where the product has

outlasted the warranty would compel manufacturers and sellers to extend their warranties for the

entire life of the vehicles. *See In re Philips*, No. 09-3072, 2010 WL 3522787, at *6-7 (D.N.J.

Sept. 1, 2010); *see also Perkins v. DaimlerChryslter Corp.*, 890 A.2d 997 (N.J. Super. Ct. App.

Div. 2006).

　　Nevertheless, a warranty defense is generally unavailable where there are allegations of

intentional concealment of a defect or where a defendant has an obligation to disclose the defect.

---

[6] The purpose underlying the requirement of Rule 9(b)'s heightened pleading standard is to provide a defendant fair notice of the substance of a plaintiff's claim so that the defendant can prepare a responsive pleading. *See In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 868 (E.D. Mich. 2009). This Court is satisfied that the Plaintiffs have provided enough detail for the Defendant to file an answer with respect to the plaintiffs' consumer protection act claims.

*See Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 501-02 (D.N.J. 2009); *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 869-71 (E.D. Mich. 2009). A duty to disclose can arise where there is a safety concern, a fiduciary relationship, or where a defendant's omission goes against a previous representation. *See In re Philips*, 2010 WL 3522787, at *6-7; *In re OnStar Contract Litig.*, 600 F. Supp. 2d at 869-71 ("[W]hen safety issues are presented, courts have sustained claims and distinguished those cases."). In the present case, Plaintiffs allege that the sudden loss of power to the vehicles poses a safety hazard for drivers and passengers of the vehicles, as well as for other travelers on the highways and streets. *See id.* ¶ 19. Plaintiffs have pled sufficient facts to show that the defective torque converter presents a risk of accidents and injuries, which directly relates to motor vehicle safety.

Defendant relies on *Perkins* in arguing that the consumer protection claims should be dismissed. In short, *Perkins* stands for the proposition that merely alleging that the warranty is shorter than the industry standard useful life of the product does not state a claim under the Consumer Fraud Act. *See Perkins*, 890 A.2d 997 at 1004-5. Nevertheless, having thoroughly reviewed the Amended Complaint and the defendant's arguments in support of dismissing the plaintiffs' consumer protection claims, the Court finds that this case is substantively different from *Perkins*.   In *Perkins*, the allegedly substandard car part never actually failed. *See Perkins*, 890 A.2d 997 at 999. Furthermore, the plaintiffs in *Perkins* did not argue that the defendant knew of a defect, which would cause the product to fail before its expected useful life. *See id.* In this instance, Plaintiffs have alleged that the torque converter failed in each of their vehicles and that Ford knew of the defect. (*See* Am. Compl. ¶¶ 26, 27, 32-39). Additionally, unlike in *Perkins*, the present case deals with Ford's expectations of its own product. In fact, Plaintiffs have alleged that Ford knew of the defect prior to selling the vehicles, Ford issued a warranty that did not

24

cover the defective torque converters during the time period Defendant knew they would fail, and Ford consciously concealed this information during the advertisement of the vehicles. *See id.* ¶¶ 4, 23, 25-27.   Finally, plaintiffs have alleged that the defect in question is related to the safety of the vehicle. The Court notes the *Perkins'* Court declined to address cases (such as the instant case) in which safety concerns may be implicated by the failure of the product in question, making *Perkins'* holding inapposite to the case at bar.  *See Perkins*, 890 A.2d 997, 1004 (noting, "Notwithstanding the prematurity of any determination about ascertainable loss in the present matter, we nevertheless affirm the dismissal of the complaint because we agree in principle with the trial judge's determination that—*absent those circumstances in which safety concerns might be implicated, as to which we offer no view*—the failure of a manufacturer or seller to advise a purchaser that a part of a vehicle may breakdown or require repair after the expiration of the warranty period cannot constitute a violation of the CFA.  Our determination is driven by the fact that in this case, it was not alleged that the deterioration or failure of such part represented a danger to others."   Taken as a whole, plaintiffs' allegations are sufficient to constitute an unlawful act under the consumer protection acts of Illinois, Maryland, Florida, Maine, Pennsylvania, and New York.[7] *See Maniscalco*, 627 F. Supp. 2d at 501-02.  Therefore, Plaintiffs have sufficiently pled that Defendant was under a duty to disclose the torque converter defect, thereby warranting that the Court **DENY** their motion to dismiss the plaintiffs' consumer protection claims, notwithstanding the defendant's express warranty arguments.

The Court has reviewed the remaining arguments by the defendant for dismissing Plaintiffs' consumer protection act claims.  The Court will address each plaintiff in turn.

---

[7] Although these states have different substantive requirements, collectively they are intended to prohibit unconscionable or immoral commercial practices, as well as fraud and deception through misrepresentations and omissions of material facts.  *See In re Philips*, No. 09-3072, 2010 WL 3522787, at *6-7 (D.N.J. Sept. 1, 2010).

### i. Plaintiff Garcia's Claim Under The Florida Unfair Trade Practices Act

Defendant contends that Plaintiff Garcia's consumer protection act claim should be dismissed because he has failed to adequately allege causation. (*See* Doc. No. 23-1, at 21). The FDUTPA is designed to "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FL. STAT. ANN. 501.202(2). Although not specifically identified by the statute, there are three elements that are required to establish a claim pursuant to the FDUTPA: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages. *See KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. Dist. Ct. App. 2008). In order to make a claim under the FDUPTA, the plaintiffs must demonstrate that the unfair or deceptive acts by the defendant are the cause of their injuries. *See General Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. Dist. Ct. App. 1998).

This Court finds that Plaintiff Garcia has adequately pled a cause of action under the FDUPTA, especially in light of the law's liberal interpretation.[8] Specifically, the Amended Complaint alleges that Ford knew of the torque converter defect, as well as the resulting transmission failure. (*See* Am. Compl. ¶ 21). Furthermore, it is alleged that Ford actively concealed its knowledge of the defect from Plaintiffs and Class members, causing the Plaintiffs significant financial harm. *See id.* ¶ 26. Finally, the Amended Complaint alleges that had the Plaintiffs known of the defect, they would have paid significantly less for the vehicle or would not have purchased the vehicle at all. *See id.* ¶¶ 28-31. The Plaintiffs have pled sufficient facts to show that as a result of Defendant's omissions, Plaintiffs were harmed. Therefore, Plaintiff

---

[8] The Florida Legislature intended chapter 501 to be construed liberally. *See Cummings v. Warren Henry Motors, Inc.*, 648 So. 2d 1230, 1233 (Fla. Dist. Ct. App. 1995).

Garcia has adequately alleged causation, and the Defendant's motion to dismiss this Plaintiff is **DENIED**.

### ii.   Plaintiff Doll's Claim Under The Maryland Consumer Protection Act

Defendant argues that absent a claim that Ford had actual knowledge of the defective torque convertor, Ford cannot be held liable for failing to disclose these facts. (*See* Doc. No. 23-1, at 22). Defendant points to the language of the Amended Complaint, which states that "Ford knew or should have known" of the defect "at the time of marketing, sale and distribution" of Mr. Doll's vehicle. (*See* Am. Compl. ¶ 27). Nonetheless, under Maryland law, the manufacturer must merely know or have reason to know of the defect. *See Hayes v. Hambruch*, 64 F.3d 657 (4th Cir. 1995).   Plaintiffs have alleged that "Ford had access to relevant data regarding the useful life of the Vehicles' torque converter and transmission and, further, had knowledge as a result of the numerous complaints made by consumers about their Vehicles' torque converter and/or transmission failures to Ford, NHTSA, internet websites and other public fora."  (Am. Compl. ¶26).   Consequently, this Court finds that, at a minimum, Plaintiffs have adequately pled that Ford had reason to know of the defect. Defendant's motion to dismiss Plaintiff Doll's consumer protection claim is **DENIED**.

### iii.   Plaintiff Pollack's Claim Under The Maine Unfair Trade Practices Act

Defendant avers that Plaintiff Pollack's unfair trade practices claim should be dismissed because voluntarily providing a limited warranty is not an unfair or deceptive act according to the MUTPA. (*See* Doc. No. 23-1, at 22).

The MUTPA provides protection for consumers against unfair and deceptive trade practices. 5 ME. REV. STAT. ANN. § 205-14. Specifically, it declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." §

207. Nevertheless, the MUTPA does not provide a clear definition of what constitutes an "unfair" or "deceptive" act. Nevertheless, to justify a finding of unfairness, Maine courts have held that the act or practice: (1) must cause, or be likely to cause, substantial injury to consumers; (2) that is not reasonably avoidable by consumers; and (3) that is not outweighed by any countervailing benefits to consumers. *See State v. Weinschenk*, 868 A.2d 200, 206 (Me. 2005). Defendant argues that Ford's express warranty, even with its limitations, provided Plaintiff Pollack with additional remedies beyond whatever remedies would have been available under the law. (*See* Doc. No. 23-1, at 23).  As a result, Defendant claims that Plaintiffs have failed to allege that Ford acted in violation of the MUTPA. *See id.* at 24.

The Defendant's argument is unavailing for two reasons. First, Plaintiffs are not contending that Ford violated the MUTPA by providing an express warranty. Rather, Plaintiffs allege that Ford violated the MUTPA by limiting its warranties when it knew or should have known that the vehicles were defective. (*See* Am. Compl. ¶ 110). Second, the Court finds that the Plaintiffs have alleged adequate facts to make a claim under the MUTPA. Plaintiffs allege that Ford violated the MUTPA by inserting an unconscionable provision into a contract when it should have known the vehicles were defective. Plaintiffs also allege that Ford fraudulently concealed the existence of the defect in the vehicles. *See* ¶¶ 110-111.  Furthermore, Plaintiffs allege that the Defendant violated the MUTPA by selling vehicles that required prohibitively high repair costs. *See* ¶ 112. Finally, Plaintiffs contend that the omissions by Ford were likely to deceive reasonable consumers, and Plaintiffs would not have bought the vehicles had Ford disclosed this information. *See* ¶¶ 115, 118. Moreover, Defendant has not provided any facts to suggest that the benefit of a defective torque converter outweighs the harm experienced by the

Plaintiffs. These allegations are clearly sufficient to plead a violation of the MUTPA, and thus

Defendant's motion to dismiss Pollack's MUTPA claim is **DENIED**.

### iv.  Plaintiffs The Ziehrs' Claim Under The New York Deceptive Trade Practices Act

Section 349 of the New York General Business Law makes unlawful "deceptive acts or

practices in the conduct of any business, trade or commerce or in the furnishing of any service in

this state." N.Y. GEN. BUS. LAW § 349. To state a claim for deceptive practices under this

section, a plaintiff must show: (1) that the act, practice, or advertisement was consumer-oriented;

(2) that the act, practice, or advertisement was misleading in a material respect; and (3) that the

plaintiff was injured as a result of the deceptive act, practice, or advertisement. *See Pelman ex*

*rel. Pelman v. McDonald's Corp*., 396 F. Supp. 2d 439, 443-44 (S.D.N.Y. 2005) (citations

omitted). The standard for whether an act or practice is misleading is objective, requiring a

showing that a reasonable consumer would have been misled by the defendant's conduct. *See id.*

Omissions, as well as acts, may form the basis of a deceptive practices claim.[9] *See Oswego*

*Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 745 (N.Y. 1995).

Plaintiffs have adequately pled a claim under the New York Deceptive Trade Practices

Act. In the Amended Complaint, Plaintiffs contend that Ford misled consumers by withholding

material information regarding the defective torque converter, and, as a result, consumers were

harmed by high repair and replacement costs. (*See* Am. Compl. ¶¶ 3, 4). This Court finds that

Ford's alleged omissions are consumer orientated, materially misleading, and are the source of

---

[9] Defendant argues in their motion to dismiss that an omission can give rise to claim under section 349, but only in a situation where the omission renders other statements made by a defendant misleading. (*See* Doc. No. 23-1, at 24). Defendant cites *Henry v. Rehab Plus, Inc.*, 404 F. Supp. 2d 435, 445 (E.D.N.Y. 2005) to support this proposition. The court in *Henry* relies on *Fogarazzo v. Lehman Bros., Inc.*, 341 F. Supp. 2d 274 (S.D.N.Y. 2005) in stating "[a]n omission becomes a misrepresentation only in a situation in which it renders other statements made by a defendant misleading." However, in *Fogarazzo*, the court was analyzing securities fraud law and not consumer fraud statutes. Consequently, this Court is not persuaded by the Defendant's argument.

the Plaintiff's injuries. Consequently, Defendant's motion to dismiss the Ziehrs' consumer

protection claims is **DENIED**.

> **v.   Plaintiff Regensburger's Claim Under The Pennsylvania Unfair Trade Practices And Consumer Protection Law (UTPCPL)**

Finally, Defendant argues that Mr. Regensburger's consumer fraud claims are barred by

the economic loss doctrine. The Third Circuit Court of Appeals predicted that the Pennsylvania

Supreme Court would apply the economic loss doctrine to fraud-based claims under the

UTPCPL in *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 668 (3d Cir. 2002). This Court follows

the Third Circuit's reasoning and finds that the economic loss doctrine bars Regenburger's

consumer fraud claim under the UTPCPL.

The economic loss doctrine provides that "no cause of action can be maintained in tort

for negligence or strict liability where the only injury was economic loss—that is, loss that is

neither physical injury nor damage to tangible property." *2–J Corp. v. Tice*, 126 F.3d 539, 541

(3d Cir.1997) (internal quotations omitted). The doctrine initially developed in the products

liability context to prevent tort recovery where the only injury was to the product itself. S*ee East

River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865

(1986) (adopting the doctrine in an admiralty products liability case). Within the Third Circuit, it

has since been applied in the context of service contracts, *see, e.g.*, *Palco Linings, Inc. v. Pavex,

Inc.*, 755 F. Supp. 1269, 1272 (M.D. Pa.1990), negligent misrepresentation claims, *see, e.g.*,

*Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 620 (3d Cir.1995), and fraud

claims under the UTPCPL, *see, e.g.*, *Werwinski*, 286 F.3d at 681. In *Werwinski*, eight plaintiffs

brought claims under the UTPCPL, alleging that certain vehicles contained a defect in their

transmissions. *See Werwinski*, 286 F.3d at 664. The appellants asserted that the defect caused

transmission failures; including, sudden acceleration, delayed forward or reverse engagement,

sudden shifts into reverse, and a total loss of acceleration or forward movement. *See id.*

Moreover, Plaintiffs claimed that Ford actively concealed the defect from their consumers. *See id.*

While Pennsylvania's Supreme Court had yet to address the issue, the court in *Werwinski* extended the economic loss doctrine to allegations of fraudulent concealment under the UTPCPL. *See id.* at 678-81. In doing so, the court relied on two decisions from other states. *See Huron Tool & Eng'g Co. v. Precision Consulting Servs.*, Inc., 532 N.W.2d 541, 545 (Mich. Ct. App. 1995); *Rich Prod. Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 977–80 (E.D. Wis. 1999).These courts held that under the economic loss doctrine, fraud-based claims are only actionable if the fraud is extraneous to the alleged breach of contract. *See id.* The court in *Werwinski* reasoned that because the fraudulent concealment claims relate to the "quality or character of the goods sold," the claims clearly are "intertwined" with, and not "extraneous" to, their breach of warranty claims. *See Werwinski*, 286 F.3d at 678-81 (citation omitted). As a result, the court held that the economic loss doctrine barred the claim. *See id.* While this Court recognizes the considerable debate over the validity of the Third Circuit's decision, the Court cannot ignore this pronouncement of Pennsylvania law. *See Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546, 556 (M.D. Pa. 2010); *O'Keefe v. Mercedes-Benz USA*, 214 F.R.D. 226 (E.D. Pa. 2003).

In this instance, Plaintiffs have only alleged economic losses resulting from Ford's fraudulent omissions. Consequently, the economic loss doctrine bars Plaintiff Regensburger's consumer fraud claim under the UTPCPL, and Defendant's motion to dismiss this Plaintiff is **GRANTED**.

### d.  Unjust Enrichment

In the alternative, Plaintiffs assert a claim for unjust enrichment. (Am. Compl. ¶ 155). Defendant counters by arguing that Plaintiffs Abraham, Doll, Pollack, and the Ziehrs' unjust enrichment claims should be dismissed because the claim is covered by an express contract between the parties. Since Plaintiffs received the unused portion of the original limited warranty when they bought their vehicles, Defendant argues that this express contract governs, thereby excluding Plaintiffs' unjust enrichment claims. (*See* Doc. No. 23-1, at 32). Plaintiffs do not directly address this argument by the Defendant; rather, they assert their right to plead in the alternative under Fed. R. Civ. P. 8(a)(3). In support of this contention, Plaintiffs cite *Hoang v. Georgetown Contractors, Inc*, No. 08:10-CV-2117-AW, 2010 WL 4485729, at *3 (D. Md. Nov. 9, 2010), for the proposition that a plaintiff may plead both breach of contract and unjust enrichment theories. Nevertheless, the court in *Hoang* stated, "a plaintiff is not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute." *See id.* (internal quotations omitted). In this instance, Plaintiffs have not disputed Defendant's contention that an express contract governs the subject matter of the claim. Consequently, without a dispute concerning the existence of a contract, Plaintiffs are barred from alleging both theories in their Amended Complaint.

Maryland recognizes an exception to this rule in situations where there is evidence of fraud or bad faith. *See Janusz v. Gilliam*, 947 A.2d 560, 567 (Md. 2008). This Court has already established that Plaintiffs have adequately pled fraudulent concealment. Therefore, Plaintiff Doll's unjust enrichment claim is sustained. Defendant's motion to dismiss Plaintiffs Abraham, Pollack, and the Ziehrs is **GRANTED**, but Defendant's motion to dismiss Plaintiff Doll's unjust enrichment claim is **DENIED**.

Defendant also argues that Plaintiffs Garcia, Mixon, and Regensburger's unjust enrichment claims should be dismissed because they have not adequately alleged that a benefit was provided to Ford when they purchased their vehicles. (Doc. No. 23-1, at 34). In order to allege unjust enrichment in Florida, South Carolina, and Pennsylvania, the plaintiff must confer a benefit upon the defendant. *See e.g.*, *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006). Ford points out that these three Plaintiffs have not provided any evidence that suggests Ford received a benefit when they bought their vehicles. Indeed, the Amended Complaint is completely devoid of any factual allegations that suggest how Ford was benefited from Mr. Garcia's purchase of a used car at DriveTime Kissimmee Dealership, Mr. Mixon's purchase of a used car from a Chevrolet dealership, or Mr. Regensburger's purchase of a used car from a Chrysler dealership. (Am. Compl. ¶¶ 8, 9, 11). Moreover, courts in these states have strongly suggested that automobile dealerships are generally not agents of automobile manufacturers in the selling of vehicles, and that the inquiry is a fact-specific one that must be supported by sufficient evidence in the record. *See e.g.*, *Zeno v. Ford Motor Co.*, 480 F. Supp. 2d 825 (W.D. Pa. 2007). Consequently, Defendant's Motion to Dismiss Plaintiffs Garcia, Mixon, and Regensburger's unjust enrichment claims is **GRANTED**.

## CONCLUSION

For the reasons stated above, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant Ford Motor Company's Motion to Dismiss.   In summary, Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff Abraham , Doll, Mixon, Regensburger  on their Magnuson-Moss Warranty Act claims and Breach of Implied Warranty claims (Counts I and II), with these claims remaining as to Plaintiffs Pollack and the Ziehrs.[10]   Defendant's Motion to

---

[10] The Court **DENIES** Defendant's Motion to Dismiss Plaintiffs Pollack and Ziehrs' Implied Warranty claims and Magnuson-Moss Warranty Act claims.

Dismiss is **GRANTED** as to Plaintiff Regenburger's consumer fraud claim under the UTPCPL (Count VIII), but Plaintiffs' consumer protection claims remain as to the remaining plaintiffs.[11] Defendant's Motion to Dismiss is **GRANTED** as to Plaintiffs Abrahams, Pollack, the Ziehrs, Garcia, Mixon, and Regenburger's unjust enrichment claims, but the unjust enrichment claims remain as to Plaintiff Doll (Count IX).[12]   The Court will proceed to issue a Scheduling Order in this case.  Defendant is directed to answer or otherwise respond.


        August 25, 2011                                             /s/
             Date                               Alexander Williams, Jr.
                                                United States District Judge

---

[11] The Court **DENIES** Defendant's Motion to Dismiss Plaintiffs Doll, Garcia, Pollack, and Ziehrs' consumer protection claims.
[12] The Court **DENIES** Defendant's Motion to Dismiss Plaintiff Doll's Unjust Enrichment Claim.